## CAMPBELL v. PRAGUE.

(Supreme Court, Appellate Division, First Department. June 5, 1896.)

1. VENDOR AND PURCHASER—ACTION BY PURCHASER FOR BREACH OF CONTRACT.
   In an action by a purchaser of land for breach of an executory contract to convey, the burden is on plaintiff to show that he demanded performance at a time when the vendor was bound to comply, and under circumstances which indicate that the vendor was unable to perform; and the fact that at the time fixed for making the conveyance there were incumbrances of record against the property, which it was the duty of the vendor to remove, will not be sufficient to support such an action, where the vendor was both able and willing to remove them.

2. SAME—REASONABLE TIME FOR PERFO MANCE.
   Whether or not the purchaser waited for the vendor a reasonable time after the hour fixed for the delivery of a deed is a question which may properly be submitted to a jury.

3. SAME—WAIVER OF TIME.
   Where a purchaser, at the time and place fixed for closing a purchase of property, made a demand for conveyance, and a tender of performance

on his part, a subsequent proposal to the broker to wait for the vendor a stated length of time at the office of his attorney was a waiver of compliance with the previous demand.

4. TRIAL—RIGHT TO SUBMIT QUESTION TO JURY—WAIVER.

The fact that both parties have requested the direction of a verdict in their favor is not a waiver of the right of a party to ask the submission of a specific question to the jury.

Appeal from court of common pleas, trial term.

Action by John Campbell against John Prague to recover damages for breach of a contract to convey to the plaintiffs the premises No. 137 West Eighty-Sixth street, in the city of New York, free and clear of all incumbrances other than a mortgage of $40,000 held by the New York Life Insurance Company at the rate of 5 per cent. per annum. In accordance with the contract, plaintiff paid to defendant the sum of $1,000 upon the execution thereof. From a judgment in favor of plaintiff, and from an order denying a motion for a new trial made on the minutes, defendant appeals. Reversed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, O'BRIEN, and INGRAHAM, JJ.

George C. Lay, for appellant.

Francis C. Devlin, for respondent.

BARRETT, J. It has finally been settled in this state that the mere facts of the existence, at the time fixed for the concurrent, mutual performance of an executory contract for the conveyance of real estate, of a lien or incumbrance upon the property, which it is in the power of the vendor to remove, does not relieve the vendee from the necessity of making a tender and demand of performance, as a condition precedent to the maintenance of an action to recover money paid on the contract. Ziehen v. Smith, 148 N. Y. 558, 42 N. E. 1080. This case disapproves of the rule laid down in Morange v. Morris, *42 N. Y. 48, and in Ingalls v. Hahn, 47 Hun, 104, and affirms the more reasonable doctrine that the contract is not broken by the mere fact of the existence on the day of performance of some lien or incumbrance which it is in the power of the vendor to remove. In the case at bar there was, upon the day specified in the contract for the closing of the title, no lien or incumbrance upon the property (other than the first mortgage) which the vendor could not have removed. Upon that day he had a satisfaction piece of the second mortgage, and he gave his attorney money with which to pay all taxes and Croton water rents. He had agreed that the first mortgage held by the New York Life Insurance Company should be 5 per cent., not at 6 per cent., as stipulated upon the face of the mortgage. But the fact was that upon his original application for the loan the company's finance committee had indorsed a memorandum to the effect that the interest should be 6 per cent. until the completion of the building, and 5 per cent. afterwards. The buildings had been completed for upwards of two years prior to the transaction under consideration, and the company during that time had been accepting 5 per cent. from the defendant, thus executing the agreement indorsed

upon the original application. Clark, the clerk of the company who had charge of the applications for loans on real estate, testified that on the 14th day of October, 1890, the company's appraiser certified that the buildings were then finished, and that from that date the interest was 5 per cent. This witness also testified that the re-duction in this manner was in accordance with the company's custom. "Mr. Prague," said he, "was building houses, and he wanted a loan. We would tell him, if we made from time to time payments, we should charge six per cent. until the completion of the buildings, and five per cent. thereafter. The last payment,—when he comes to the last amount,—we send our appraiser there, and he certifies that the houses are finished, and when we make the last payment we reduce the rate of interest. I did that myself, personally, in my order for the last payment." The plaintiff was, of course, entitled to conclusive evidence of this reduction. He was not bound to accept the defend-ant's assurance that it had been done. The mortgage at 6 per cent. was all that appeared upon record. But if he had demanded a proper instrument, legally affecting such reduction, there can be no doubt that the defendant could have furnished it. As Judge O'Brien said in Ziehen v. Smith, supra, "It cannot be affirmed, under the circumstances, that the plaintiff would not have received the title which the defendant had contracted to convey." A few days later the company actually gave the defendant a certificate, to be furnished to the plaintiff, to the effect that the then present rate of interest was 5 per cent. That certificate, or any other binding covenant, could have been obtained from the company upon the day fixed for the closing of the title just as readily as it was obtained five days later. Clark testified without contradiction that the only reason why such an instrument had not previously been given was that the defend-ant had not asked for it; that he could have had it for the asking; that, as "the true amount was only five per cent., we could not help giving him that certificate." It is apparent, therefore, that the mere fact of the nonexistence upon the day of performance of an instrument evidencing such reduction did not of itself work a breach of the contract. Nor can it be affirmed that it was not then in the vendor's power to procure such an instrument. On the contrary, it may safely be affirmed that such an instrument could readily have been procured by him, and delivered to the plaintiff upon the day fixed for performance. It will be observed—and the fact should be emphasized—that this is not an action by the vendor against the vendee for a breach of the contract by the latter. Undoubtedly the vendor could only maintain such an action upon showing actual, and not possible, readiness upon his part in all particulars. But that is not this action. Here the vendee sues the vendor for the latter's breach of the contract, and the burden is upon the vendee to show that he demanded performance at a time when the vendor was bound to comply, and under circumstances which indicate that the vendor was unable to perform. What are the facts on this head? The con-tract provided that the deed should be delivered "on the 23rd day of February, 1893, at 11 o'clock a. m., at the office of Adams & Comstock, 36 Wall street, N. Y. City." Upon the day and at the hour

specified the plaintiff and his counsel, Devlin, appeared at Mr. Comstock's office, apparently ready to close the title. Mr. Comstock was present, but the defendant was not. The defendant misunderstood the hour, and did not arrive until about 20 minutes to 12. While thus waiting for the defendant, the plaintiff tendered the purchase money to Comstock, and demanded a deed. Comstock could not comply in the absence of the defendant. Thereupon the plaintiff's counsel asked Comstock to adjourn the matter, but Comstock declined, stating that he expected the defendant every minute. It is true that Devlin testifies that the request for the adjournment preceded the tender. But he is not corroborated in this statement by either his client or by Comstock (who denies the tender in toto), while his own managing clerk, Zwinge, distinctly testifies that the request for an adjournment followed the tender and demand. After Comstock denied the request for an adjournment, and at 25 minutes to 12, the plaintiff and his counsel left Comstock's office. As they were leaving, Comstock said: "How long will you be at your office? I will be up there just as soon as Mr. Prague comes in, and I will have all the papers. I will have the deed executed, and all the papers ready, and close this up; and I am sure Mr. Prague means to be here in a few minutes." To this Devlin answered, "I will be there for a little while." Comstock then inquired, "Will you be there until half past twelve?" Devlin replied, "Yes; he would." And thereupon he and his client left. The plaintiff heard all this, and made no objection. Comstock's testimony, as quoted, is not really denied. Devlin was asked the following question, and gave the following answer: "Q. When you left Mr. Comstock's office, did you not tell him you would remain in your office until half past twelve? A. That I have no distinct recollection of. Mr. Comstock swore to that. I don't contradict it." Zwinge testified that he did not recollect Devlin's making the remark "that he would wait at his office until half past twelve for Mr. Prague. He said he would wait a little while." Campbell was asked whether he heard Devlin say that he would wait at his office until half past 12 for Mr. Prague to come in, and he answered: "I can't say the hour, sir, exactly. Q. He said he would wait, didn't he? A. I think he did." It is clear that Comstock's version of the matter was accurate, and was substantially undisputed.

In this state of the evidence, two questions were presented: First. Whether the plaintiff remained a reasonable time at Comstock's office, and whether his tender and demand there were not, under all the circumstances, premature and precipitate. Second. Whether, notwithstanding such tender and demand, it was not the intention of the parties to leave the matter open, at least until half past 12 of the same day. Upon the first question the defendant's counsel requested a submission to the jury. This was refused, and the defendant excepted. It is apparent that the learned judge refused the request solely upon the ground that, even at half past 12 of the same day, the liens for taxes were not cleared off, nor was written evidence at hand of the interest reduction from the first mortgage. He relied upon and followed Morange v. Morris, su-

pra. This is apparent from the prior language of the learned judge. In response to the argument of counsel, he observed:

"As to the payment of taxes and water rents, the court quotes from the opinion of the court in Morange v. Morris, *42 N. Y. 51, which says, as to incumbrances, 'It was the duty of the defendant to have caused them to be discharged before the time arrived at which he had stipulated to convey,' cited with approbation in Hartley v. James, 50 N. Y. 38, and I have not seen it overruled."

We think it may safely be assumed that if Ziehen v. Smith, supra, had then been decided, and had been before the learned judge, he would not have refused to submit the question of reasonable time to the jury merely because certain things remained to be done at half past 12, which things were entirely within the defendant's power to do. Whether 35 minutes were, under the circumstances, a reasonable time for the plaintiff to wait, was, in our judgment, a fair question for the jury. Zwinge testified that, in some instances within his experience, it took as much as an hour to close an ordinary title, where there were several taxes and mortgages to be paid off, and new loans made on an exchange of property. The following questions were put to this witness, and the following answers given:

"Q. Under those circumstances, where it is necessary to take a little time, lawyers are generally patient with each other until the parties can arrive on the scene? A. They are. Q. They do not hold closely to the minute, in the closing of a title, where both parties are ready and willing to close the title? A. No, sir."

Mr. Comstock testified that he told the plaintiff and Devlin that the deed was prepared, but that, for some reason he did not know, Mr. Prague had not arrived yet; that he expected him to come; and that he would undoubtedly be there within a few minutes. Devlin testified that Comstock said Prague should have been there, and he could not account for his absence. That time was not essential to the plaintiff is clearly evidenced by his request for an adjournment. Devlin said, "I requested an adjournment for a day or so, until the difficulties might be arranged." Zwinge said, as we have seen, that this request for an adjournment followed a tender. Upon these facts, we do not think it can be said, as matter of law, that there was a breach of this contract at the expiration of the 35 minutes. If the plaintiff and his counsel had exercised the customary patience, and had waited 5 minutes more, they would have seen the defendant, and the whole matter could have been readily closed. The defendant could have given the plaintiff that day everything which he had contracted to give him. It cannot be affirmed that he could not have done this within a reasonable time after his appearance at Comstock's office. The latter's office was but a short distance from the office of the New York Life Insurance Company. The register's office was but five minutes' walk from there, and, according to Comstock's undisputed testimony, "the whole thing could have been done in a couple of minutes." We think, therefore, that this question should, at least, have been submitted to the jury.

As to the second question, the decision of the learned judge was also erroneous. No other conclusion can correctly be drawn from the undisputed facts to which we have adverted, save that compliance with the previous demand for performance—assuming such demand to have been made—was waived. With such waiver, a further demand of performance became necessary to establish the breach upon which alone the plaintiff could maintain his action. The evidence was overwhelming—indeed, substantially all one way —in support of the defendant's claim that the entire matter was left open until half past 12, and that the plaintiff left Comstock's office with the distinct understanding that the contract was not then ended; that if the defendant arrived within a short time the transaction could be renewed in Devlin's office; and that he and his counsel would remain there (the closing acts meanwhile being in abeyance) until half past 12. The plaintiff's subsequent course in absenting himself from Devlin's office prior to the time indicated, and then leaving Devlin without power, is suggestive of bad faith, and of a desire to take advantage of trivial and unsubstantial objections to what was in reality a satisfactory title. We think the plaintiff was bound to make a further tender of performance after he left Comstock's office, as a condition precedent to an action for a breach of the contract; and, upon both the grounds discussed, there should be a new trial. The direction was erroneous, in itself, and the refusal to submit the specific question of fact was also erroneous.

The plaintiff claims that the defendant's request to go to the jury was too late; that, both parties having asked the court to direct a verdict in their favor, they waived the right of submission. This contention is without merit. The defendant undoubtedly waived the right to have the case sent to the jury generally (Mayer v. Dean, 115 N. Y. 559, 22 N. E. 261), but not the right to have a specific question of fact submitted to them (Koehler v. Adler, 78 N. Y. 290). The defendant here formulated a specific question of fact, which he requested the trial judge to submit to the jury. The presumption of the defendant's consent to the decision by the court of the question thus formulated was, as was said in Koehler v. Adler, supra, "repelled by an express request to go to the jury upon" that question of fact.

The judgment and order denying the motion for a new trial should be reversed, with costs to the appellant to abide the event. All concur.

INGRAHAM, J. I concur in the conclusion arrived at by Mr. Justice BARRETT, as I think, upon the evidence, there was at least a question for the jury to determine,—whether or not the closing of the title had been adjourned until half past 12 of the day fixed therefor at the office of the attorney for the plaintiff, and whether, at such adjournment hour, the defendant appeared, ready to complete his contract. It is true that the plaintiff did, at the time and place mentioned in the contract for the completion thereof, make what I consider to be a sufficient tender, but, if subse-

quent to that there was an adjournment to a future time and place, such adjournment would be a waiver of the tender already made; and then, under the rule stated in Ziehen v. Smith, 148 N. Y. 558, 42 N. E. 1080, before either party would be in default a new tender would be required.

As to the objections to the plaintiff's title, they are evidently of a character which could be readily obviated. And so far as the interest of the mortgage with the insurance company being at 6 per cent., instead of 5 per cent., the mortgage had but a few days to run. It had been executed under an agreement by which the interest was to be reduced when the houses were completed. That agreement had been executed by a verbal understanding, and ·the receipt .of 5 per cent. for two years; and the evidence is that the company were quite willing to give a formal agreement, and did subsequently give such an agreement. The mortgage, however, had but a few days to run, and the difference in the interest would .be quite small, and not material.