(53 Misc. Rep. 621)

### KAUFMANN v. BRENNAN et al.

(Supreme Court, Appellate Term. April 10, 1907.)

1. VENDOR AND PURCHASER—CONTRACTS—PERFORMANCE—TIME OF ESSENCE OF CONTRACT.

A contract for the purchase of realty, $300 of the price of which was to be paid down as a deposit, designated the place for closing title at a certain date and hour. At the appointed time and place the purchaser appeared, and, after waiting a half hour for the vendor, tendered the amount due under the contract and immediately thereafter left the place, leaving word that she rescinded the contract by reason of the unfinished condition of the buildings on the premises, though no previous objection was made to their unfinished condition. By mistake as to the time, the vendor failed to appear at the stipulated time, but, on receiving telephonic communication of the presence of the purchaser, immediately started for the place and arrived one-half hour after the purchaser's departure. The vendor subsequently notified the purchaser that he was ready to close the title, but received no answer until suit was brought by the purchaser to recover the amount of the deposit as on a breach of contract. *Held*, that there being no stipulation in the contract making performance at the exact time fixed the substance of the agreement, and no notification given to the vendor that such time was material, and no damage resulting to the purchaser being shown, time was not of the essence of the contract, so that the tender of the amount due under the contract was premature, and the rescission of the contract unavailing.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 48, Vendor and Purchaser, §§ 121–124.]

2. SAME—ACTION—BURDEN OF PROOF.

In an action to recover a deposit made on a contract for the sale of realty which was alleged to be breached, the burden is on the plaintiff to show that performance was demanded at a time when the defendants

were bound to comply and under circumstances which indicated that they were unable to perform.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 48, Vendor and Purchaser, § 1012.]

3. APPEAL—REVIEW—EXCEPTIONS.

Objection to the exclusion of evidence cannot be considered on appeal, in absence of exception in trial court.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 2, Appeal and Error, §§ 1503, 1504.]

Appeal from Municipal Court, Borough of Manhattan, Eleventh District.

Action by Minnie Kaufmann against Anna E. Brennan and others. From a judgment for plaintiff, defendants appeal. Reversed.

Argued before GILDERSLEEVE, P. J., and GIEGERICH and ERLANGER, JJ.

Charles C. Suffren (John M. O'Neill, of counsel), for appellants.

Roy, Watson & Naumer (George A. Meyer, of counsel), for respondent.

GIEGERICH, J. The action was brought by the plaintiff, the vendee in a contract for the purchase of certain real property, against the defendants, the vendors, to recover back $300, a deposit made at the time of the contract. On July 12, 1906, the defendants entered into an agreement with the plaintiff whereby, in consideration of the sum of $7,400 to be paid by the latter, they agreed to sell to her a certain piece of real estate situate on the easterly side of East Tenth street, distant 480 feet northerly from the intersection of the easterly side of East Tenth street with the northerly side of Avenue P, in the county of Kings, in this state, subject to covenants and restrictions contained in former deeds. The consideration was to be paid as follows: Three hundred dollars in cash on signing the contract (which was paid); $1,700 in cash on the delivery of the deed; $4,000 by the vendee giving a purchase-money mortgage for that amount, which the vendors agreed to secure from the Title Guarantee & Trust Company without expense to the vendee; and $1,400 by the vendee giving a purchase-money mortgage for that amount. The bonds and mortgages were to be drawn at the expense of the vendors, who also agreed to pay the recording tax. The deed was to be delivered at the office of said Title Guarantee & Trust Company, 175 Remsen street, Brooklyn, N. Y., on August 3, 1906, at 10 a. m. The vendors agreed to deliver a full-covenant warranty deed, conveying the premises free from all incumbrances, except as above stated. The contract also contained a clause that the vendee was to paint and paper the interior of the premises at her own expense, for which an allowance of $100 from the original contract price was made, thus reducing the same to $7,400. The vendors agreed to pay for the policy of title insurance from the said Title Guarantee & Trust Company, and they also agreed to give, and the vendee agreed to accept, a title such as said title company would approve and insure.

At the time and place specified in the contract the plaintiff appeared with her attorney, but neither of the defendants had then put in an

appearance. Mr. Siegelman, an attorney in the employ of said title company, who had charge of the closing of the title, according to plaintiff's testimony, stated that he could not close the title because the defendants were not there, and that she "would have to wait." The plaintiff and her attorney did wait, but just how long is in dispute; the former testifying that she waited one hour and three-quarters, while Siegelman, on the other hand, testified that she did not wait any longer than half an hour. At all events, the defendants having failed to appear, the plaintiff's counsel tendered to Siegelman the amount due under the contract and demanded a deed, and immediately thereafter the plaintiff and her counsel left the office, saying that they could wait no longer, and that, if the vendors came in, to inform her that the plaintiff would refuse to take title because the building was not ready. It appears from the testimony that the defendants' failure to appear at the stipulated time was due to a mistake on their part as to the hour fixed for the closing of the title; they being under the impression that it was to take place at noon, instead of 10 o'clock in the forenoon. It seems that they had given the contract, which was executed in duplicate, to the attorney who drew it, a Mr. Colton, who was also connected with said title company, for the purpose of examining the title, and he testified that Mr. Brennan "rang him up about a quarter past 10 o'clock and asked if the title was all ready to close," and that he informed him that it was; that the "people" were there, and to hurry right down. It further appears from the testimony of Colton and of Mr. Brennan that the former and the defendants arrived at said title company's office at about 11 o'clock, at which time the plaintiff and her counsel had already left. It was also shown on behalf of the defendants that at the time so named for closing title the title company had agreed to loan the said sum of $4,000, as stipulated by the defendants, and that it had prepared and had ready for execution a bond and mortgage for that amount, had issued a policy of title insurance, had ready for execution the bond and mortgage for $1,400, as well as the deed of the premises, that all that was required in order to close the title was the presence of the defendants, and that they appeared within about one hour after the specified time, able, ready, and willing to perform the contract. Two days after the time above stated, viz., on August 5th, the defendant Brennan wrote the plaintiff, stating, among other things:

"I was sorry you could not wait at the Title Guarantee Co., as you had left when I got there. You know Mr. Colton had my contract, so somehow I misunderstood the time, and thought it was to be at 12 o'clock. However, it would not have made much difference, as on account of the plumbers' strike we were unable to complete the work, and under such circumstances I could not expect to close title that day. The title company would not give title until it was completed. The plumbers are now working on the house, and will be completed in a few days. * * * I wish you would let me know when you can come down. When you do, you can make arrangements for closing title If you would let me know the exact time you could come down, I could be sure to be home. * * *"

On August 5th defendants' counsel wrote plaintiff:

"Mr. Brennan has previously notified you that owing to a strike on the part of his employés the plumbing work could not be finished on the date originally

agreed upon for the closing of this title, but the plumbing work has now been finished, and the premises are ready for your immediate occupancy. If you are not ready to close title on August 10th, Mr. Brennan is willing to close title upon such day in the following week as may be agreeable to you. Please let me hear from you in reference to this matter at once."

No reply to either of these letters was sent by the plaintiff, and she commenced this action on August 18th to recover the $300, the sum deposited upon the signing of the contract.    The answer was substantially a denial of all the material allegations of the complaint, except the receipt of the said sum of $300, and that the defendants had refused to repay the same to the plaintiff, and set up as a separate defense the plaintiff's alleged refusal to perform, although notified of the defendants' readiness to do so, and interposed a counterclaim for $283.74, damages for breach of contract by the plaintiff.

It appears from the return, which, in conformity with the present practice (Municipal Court Act, Laws 1902, p. 1396, c. 580, § 317; Bevins & Rogers' Appellate Court Practice, 20), contains all the proceedings, including the evidence and the judgment, that the questions litigated upon the trial were whether, as claimed by the plaintiff, she could insist upon closing the title at the exact hour stated in the contract, or whether, as contended for by the defendants, "they had a certain leeway," that time was not of the essence of the contract, and that from their expressed willingness to close some time later they were at liberty to do so, and that there was no breach of the contract under those circumstances.    It further appears from the return that the justice, in giving judgment for the plaintiff, among other things said:

"The only question in dispute was whether the plaintiff was justified in her position as to considering the contract for the sale of property with the defendants as broken by the defendants' failure to appear at the exact time stated in the contract.  It cannot be disputed that the plaintiff was present at the time stated in the contract, or that she was ready, able, and willing to perform at that time.  The defendants claim to have been ready about one hour afterwards, although there is some doubt as to whether or not the defendants could actually have fulfilled their part of the contract at that time.  It would seem, under the authority of Zorn v. McParland, 11 Misc. 555, 32 N. Y. Supp. 770, affirmed 155 N. Y. 684, 50 N. E. 1123, without opinion, and Zirinsky v. Post, 112 App. Div. 74, 98 N. Y. Supp. 132, that the plaintiff had the right to consider the contract broken when the defendants failed to be present at the time set for the closing.  There, as in this case, no equitable intervention on the part of the court was asked for, and the question resolves itself into one strictly of law, as to whether or not a party has a right to rely upon the terms of a contract; and it would seem, under the authorities cited, that the plaintiff's contention in this regard is correct."

It will be observed that the justice disposed of the case upon the theory that, since the action was at law, the time named for the delivery of the deed was of the essence of the contract in suit, and that the failure of the defendants to be present at such time constituted a breach of the contract, which entitled the plaintiff to rescind the same.    The plaintiff seeks to uphold the judgment upon the same grounds.    While some of the earlier cases, and even those cited by the justice, seem at first glance to hold that, while in equity time is not regarded as of the essence of the contract, at law the rule is different, time there being always regarded as an essential element, yet in the more recent cases, and, as will hereafter appear, even those quoted by the justice,

a broader and more just rule has now been adopted in actions at law. In 29 Am. & Eng. Enc. of Law (2d Ed.) p. 694, it is said:

"The rule is usually stated to be that at law time is always of the essence, and at all events time is always of the essence where there are no mutual remedies, or where the purchaser is buying for speculative purposes. The tendency of the modern cases, however, seems to be that, even at law, time is not of the essence, unless it, is expressly so stipulated by the parties, or unless it clearly appears from the circumstances of the case. And this would seem to be the most satisfactory rule."

Numerous adjudications in harmony with these views have been made in this state, notably in Dillon v. Masterson, 39 N. Y. Super. Ct. 133, and cases there cited; Myers v. De Mier, 52 N. Y. 647; Schmidt v. Reed, 132 N. Y. 108, 30 N. E. 373; Zorn v. McParland, supra; Ziehen v. Smith, 148 N. Y. 558, 42 N. E. 1080; Campbell v. Prague, 6 App. Div. 554, 39 N. Y. Supp. 558; Higgins v. Eagleton, 155 N. Y. 466, 50 N. E. 287; Darrow v. Cornell, 30 App. Div. 115, 51 N. Y. Supp. 828. It will be seen, upon examination, that the rule laid down by these cases, viz., that time is not of the essence of a contract, was applied to actions at law as well as in equity; Zorn v. McParland, Ziehen v. Smith, Campbell v. Prague, and Higgins v. Eagleton, being actions at law to recover back the sum paid on signing the contract for the purchase of real property and for damages for breach of contract, and where the defendant. did not seek as affirmative relief specific performance of the contract.

In Zorn v. McParland, supra, which, as noted, was quoted by the justice and is relied upon by the respondent, the plaintiff by an action at law sought to recover the deposit made by him under a contract for the purchase of real estate, and for a further sum paid by him for examining the title, which was rejected on the ground of certain incumbrances affecting the title, which, it was alleged, disabled the defendant from carrying out the sale. The defendant did not set up any equitable defense as a counterclaim for the specific performance of the contract, but stood upon his strict legal right to retain money which had been paid to him by the plaintiff, on the ground that at law no recovery can be had if the plaintiff was at fault in refusing to perform at the time fixed for purpose. It appeared there that, several days prior to the adjourned day for closing the contract, the counsel for the plaintiff notified the defendants' attorney that he would insist that the liens and charges upon the property should be discharged or released of record on the day and at the time so fixed for closing the title. There was no claim that the notice was not sufficient, or that the defendant was ignorant of the matters upon which the objections of the plaintiff were founded. In this situation, the court said that the defendant was bound to comply with his part of the contract on the day fixed, and upon his failure to do so the plaintiff was entitled to consider it at an end. In announcing such conclusion, the court cited the oft-quoted rule:

"The parties to a contract may by its terms make the time of performance essentially important, and its observance in that respect requisite to relief. Benedict v. Lynch, 1 Johns. Ch. 370. And, when that is not so, either of the parties to the contract may, by a reasonable notice to the other party for that purpose, render the time of performance as of the essence of the con-

tract, and avail himself of forfeiture or default. Myers v. De Mier, 52 N. Y. 647."

The court also quoted from that part of the opinion in Schmidt v. Reed, 132 N. Y. 113, 30 N. E. 374, which in effect states that the stipulated time of performance of a contract for the conveyance of land is of the essence of the contract. An examination of the latter case, however, shows that the court, after quoting at length the rule last above set forth, said:

"Time was not necessarily of the essence of the contract in question. But the trial court found that the plaintiff notified the defendants on the 12th of November, 1888, that the mortgage would mature on the 1st of November, 1889, and that he would not accept a deed of the premises unless the defendants procured for him, at the time fixed for the passing of the title, a proper and sufficient extension of the mortgage until November, 1891; and upon that fact the court determined that such motion made time of the essence of the contract."

The case of Ziehen v. Smith, supra, which was brought by the vendee of real estate against the vendor to recover damages for a breach of contract to convey, and for the return of money paid, illustrates the tendency of our law courts to depart from the former rule applied in actions at law requiring performance of the contract at the specified time. In some of the cases, especially Morange v. Morris, 3 Keyes, 48, and Ingalls v. Hahn, 47 Hun, 104, it had been held that the existence at the date fixed for performance of some liens or incumbrances of the property was sufficient to sustain an action by the vendee to recover the part of the purchase money paid upon the contract. The court, however, held that mere existence, on the day fixed for closing the title, of an incumbrance upon the property which it was within the power of the vendor to remove, did not constitute a breach of the contract.

In Campbell v. Prague, supra, the action was brought to recover damages for the breach of a contract to convey certain real property free from all incumbrances save a mortgage bearing interest at 5 per cent. It appeared that the transaction was to be closed at 11 o'clock on a certain day at the office of the vendor's representative, and that at the day and hour appointed the vendee and his counsel appeared at that office, but, owing to a mistake as to the hour, the vendor was not present. After waiting awhile, the vendee tendered the purchase money to the vendor's representative and demanded a deed, which was refused because of the absence of the vendor. The vendee's counsel asked that the matter be adjourned, and this request was refused upon the ground that the vendor was expected every minute. There was a conflict in the evidence as to whether this request for the adjournment was made before or after the tender. The vendee and his counsel waited 35 minutes, and, when about to leave, his counsel was asked by the vendor's representative how long he would be in his office, as he (the vendor's representative) expected the vendor in a few minutes, and would come to the office of the vendee's counsel with the vendor and close the matter. The vendee's counsel finally said he would be at his office until half past 12. Thereupon the vendee and his counsel left the office, and five minutes later the vendor arrived and went with

his representative to the office of the vendee's counsel, but did not find the vendee there. Upon the trial it appeared that at half past 12 on the day fixed for closing the title there were charges for taxes and water rates which were liens upon the premises, but that the vendor had given his representative money to pay such charges. It also appeared that the mortgage, subject to which the vendee was to take title, on its face bore interest at 6 per cent., but that the vendor had an understanding with the mortgagee, and could have procured a written agreement, that the rate of interest was to be reduced to 5 per cent. The vendor asked to go to the jury upon the question whether the vendee had waited a reasonable time for the closing of the sale, but the court denied the request and directed a verdict for the vendee. Upon appeal to the Appellate Division it was held that such direction was improper. The attention of the court in Campbell v. Prague, supra, does not, so far as the opinion discloses, seem to have been called to the decision of Zorn v. McParland, supra; but it sufficiently appears from the opinion of the court that it did not regard the time named for the delivery of the deed as of the essence of the contract. This view finds confirmation in the statement contained in the opinion that the mere fact of the nonexistence upon the day of performance of an instrument evidencing the reduction of the interest did not of itself work a breach of the contract, and, further, that one of the questions presented by the evidence was whether the plaintiff remained a reasonable time at the office of the attorney for the vendor, and whether his tender and demand there were not, under all the circumstances, premature and precipitate.

The case of Higgins v. Eagleton, supra, so far as I can discover, is the latest utterance of the Court of Appeals upon the subject under discussion. There the deed was to be delivered, on or before June 15, 1892, at a place named in the contract. On the day named the parties met, and the plaintiff declined to take the title offered for the reason, then given, that the premises were incumbered by a certain easement and a mortgage and unpaid taxes and water rates. Thereupon the plaintiff gave notice that he declined to take the premises and elected to rescind the contract, and demanded the return of the sum deposited upon signing the contract. Nine days later the plaintiff brought suit to recover the sum so deposited for a breach of the contract by the defendant. Upon the trial the defendant asked the court to submit to the jury the question whether the plaintiff was justified in refusing to accept the title tendered. The request was refused, and the defendant excepted. The court then directed a verdict for the plaintiff for the amount of the deposit and damages, and from the judgment subsequently entered the defendant appealed to the General Term of the Court of Common Pleas, which affirmed the judgment. In reversing the judgment the Court of Appeals said (page 472 of 155 N. Y., page 288 of 50 N. E.):

"In this contract there was no express stipulation making prompt performance, or performance upon the day named, any part of the substance of the agreement. So that, manifestly, time was not of the essence of the contract. Under these circumstances, with the offer of the defendant, by release and removal of the objectionable beams, to make the title to the premises absolutely good, it is clear that the plaintiff was not in a position to insist upon a

rescission of the contract,·or to recover damages or the purchase price paid by his assignor."

The case of Zirinsky v. Post, 112 App. Div. 74, 98 N. Y. Supp. 132, which was also cited by the justice and is relied on by the plaintiff, is not, as claimed by the plaintiff, opposed to the view that in actions at law time is not necessarily of the essence of a contract for the sale of real property. There the vendee, after waiting one hour for the vendors to appear at the time and place designated for passing the title, tendered in their absence the amount due to the person in charge of the office and demanded from him the deed of the premises, which was refused, and he brought an action at law to recover the sum paid on signing the contract. The vendors never appeared, nor tendered the deed, and subsequently sold the property at an advanced price. Judgment in favor of the plaintiff was rendered by direction of the court, and in affirming it Woodward, J., speaking for the Appellate Division, among other things, at page 75 of 112 App. Div., and page 133 of 98 N. Y. Supp., said:

"If the defendants presented any equities, it might be that the court would be disposed to disregard the exact time, and to hold that a substantial compliance was all that was necessary; but in the case at bar it is conceded that the defendants subsequently sold the property at an advance in price, and their effort to keep the $500 paid by the plaintiff, where they are alone in default, hardly calls for any effort on the part of this court to interfere with the judgment, and we find no case which would warrant such interference."

The vendors, by conveying the property, placed themselves in such a position that they were unable to perform, and the vendees could therefore, without formal tender and demand on their part, maintain an action to recover the money paid on the contract or for damages. Ziehen v. Smith, supra. In the present case, however, we have no such situation. The defendants, as above shown, were at all times subsequent to their tardiness in appearing on the day named able, ready, and willing to perform the contract on their part, and notified the plaintiff to that effect, but she, it seems, wholly ignored all such notices. From what has been said, it is plain that the disposition of the Zirinsky Case turned upon the subsequent sale of the property by the vendors.

The above-quoted remarks, however, clearly indicate that the court did not regard the time appointed for the delivery of the deed of the essence of the contract, and there runs through the entire opinion a suggestion that, if the vendors had presented any equities, although the action was at law, they would have been relieved from their default in appearing at the appointed time and place. That the same feeling has long been entertained by the courts of this state has abundantly been shown by the cases above cited. It is a matter of common knowledge and experience that the closing of titles to real estate is attended with more or less delay, and it might almost be said that they are usually not passed on the day originally fixed. Consequently it would be a great hardship to those interested in the transfer of titles to real property to be held to the prompt performance of contracts for the sale thereof at the precise hour and minute named under penalty of forfeiting all their rights thereunder; and this without any previous notice or agreement that time was ·to be deemed the essence

of the contract. This difficulty, as seen, has been overcome by the application of more liberal and just principles in modern decisions affecting litigations arising out of real estate transactions in courts of law (thereby approximating the principles originating in courts of equity), so that it may now be stated as a recognized rule that in actions at law to recover the deposit or for damages the time appointed for the delivery of the deed under an agreement for the sale of real property will not be regarded as of the essence of the contract, although a precise day and hour are fixed, unless the contract contains an express stipulation making performance upon the day and hour named the substance of the agreement, or where, previous to the day set for the closing of the title, reasonably sufficient notice has been given to the vendor that for certain specified reasons prompt performance of the contract is required.

Applying the general rule above stated (for the plaintiff failed to prove any exceptional facts which would take this case out of the general rule), it is obvious that the time fixed for the delivery of the deed was not of the essence of the contract. The contract does not contain any stipulation making prompt performance any part of the substance of the agreement, nor was any notice given before the time specified for the delivery of the deed that prompt performance was required. Time was, therefore, not of the essence of the contract, and, since it was not, the justice erred in holding, as he did, "that the plaintiff had the right to consider the contract broken when the defendants failed to be present at the time set for the closing." Moreover, no evidence was adduced that the delay caused by the tardy arrival of the defendants would have made any material difference to the plaintiff, if the deed had been delivered after such arrival, nor that the plaintiff would have suffered any damage if the closing of the title had been delayed for a few days after the day named.

Since testimony was adduced in behalf of the defendants that the failure to appear at the precise hour designated was not due to any intentional fault on their part, and consequently was excusable, and as there is no proof that the plaintiff was damaged by their delay in appearing, or would have been damaged had she taken title a few days later than the one specified therefor, the justice was not warranted in determining, as matter of law, that the rights of the defendants were lost by their failure to appear at the appointed hour. As the action was predicated upon the defendants' alleged breach of the contract, the burden is upon the plaintiff to show that she demanded performance at a time when they were bound to comply and under circumstances which indicate that they were unable to perform. Campbell v. Sprague, 6 App. Div. 558, 39 N. Y. Supp. 558. It is undisputed that at the stipulated hour all the papers required to be drawn by the defendants were in readiness for execution, the policy of title insurance had been issued, and all that was necessary to close the matter was the presence of the defendants to sign and acknowledge the deed. As will hereafter more fully appear, if the latter had been present, the contract, so far as it related to the covenants and conditions on their part, could then have been fully performed. It is therefore manifest that if the delay of the defendants in appearing at the stipulated time was excusable,

and the plaintiff's tender and demand were premature and precipitate, she was not in a position to insist upon a rescission of the contract or to maintain this action.

The facts in relation to the failure of the defendants to arrive promptly at the appointed time and place have already been discussed at considerable length, and more would not be required, were it not for the point urged in the brief of plaintiff's counsel that Siegelman testified that he did not see Mr. and Mrs. Brennan on the day fixed for closing the title; but this is explained by the testimony of Colton that when they arrived at his office the plaintiff and her attorney had already departed. In this situation he did not deem it necessary to send the parties to Siegelman's office. The good faith of the defendants in the matter is sufficiently evidenced by their telephoning to Colton for the purpose of learning the exact hour of closing and their immediate departure for his office when they were told "to hurry right down." If Colton neglected to notify them of the time set for the passing of the title, or to send word to Siegelman that they had started for the title company's office, they should not, under such circumstances, be the sufferers. In this connection, it should be borne in mind that Siegelman testified that the title company in question was a large institution and had a great many departments, and this may have been the reason why Colton failed to inform Siegelman that the defendants and Mr. Brennan were on the way.

Regarding the tender and demand of the plaintiff, in view of certain undisputed testimony; I cannot bring my mind to any other conclusion than that the tender was made merely for the purpose of rescinding the contract. The evidence, in my opinion, discloses a design on the part of the plaintiff not to take title to the premises, even though she may have gone through the form of making a tender and demand. It appears, without contradiction, from the testimony of Siegelman, that, although the plaintiff and her attorney were informed on the day fixed for closing the title that the defendants would be prepared to perform upon their arrival, the attorney stated: "Well, we are not going to wait here very long. We are ready to close this matter. We have the money now"—and then started to tender the money. After being requested to wait a few minutes, the plaintiff and her attorney waited, but how long, as above shown, is in dispute. However, they left before the arrival of the defendants and Mr. Brennan, and in leaving stated to Siegelman, if the defendants came in, to inform them "that the plaintiff would refuse to take title because the buildings were not completed, as called for in the contract."

The record is barren of any proof that prior to this time the plaintiff ever requested the defendants to expedite the making of repairs or improvements, or made any mention of them until the title was to be closed, although she must have known that they were not finished before going to the title company's office on the day in question. At any rate it does not appear that she there obtained such information. As a matter of fact, however, the contract does not require the defendants to put the building in repair, although the defendant Brennan was under the impression, when she wrote the letter of August 5th, that "the title company would not give title until it was completed." That

she is mistaken is evidenced by the issuance of the policy of title insurance by the title company in question and its readiness to pass the title at the stipulated time. If the plaintiff had been willing to take title, she would have waited a little while longer for the defendants on the day in question, when requested to do so, or, if she could not then wait, she would have arranged to take title later, as proposed in the letters of Mrs. Brennan and her attorney.

All of the foregoing evidence has an important bearing upon the good faith of the plaintiff in making the tender and demand in question, as well as upon the question whether or not under all the circumstances the same were premature and precipitate. In this view, the defendants should have been permitted to show that the plaintiff never intended to take title to the property; but, since they did not except to the ruling of the justice in excluding the same, the point cannot be considered upon this appeal. Huck v. Bischoff (Sup.) 84 N. Y. Supp. 173; Bevins & Rogers' Appellate Court Practice, 80.

Summing up the result of my examination of the facts of the case, as disclosed by the return, in the light of the rule so deduced from the authorities, my opinion is that time was not of the essence of the contract in controversy, that the failure of the defendants to be present at the time and place agreed upon for the closing of the title did not of itself constitute a breach of the contract and entitle the plaintiff to rescind the same and to maintain this action, and that if they had been present they would have been able, ready, and willing to fully perform the contract on their part, as they were subsequently when they notified the plaintiff as above stated.

The judgment should therefore be reversed, and a new trial ordered, with costs to the appellants to abide the event.

GILDERSLEEVE, P. J., and ERLANGER, J., concur in result.

---

(53. Misc. Rep. 606)