(109 App. Div. 38.)

### FRANK v. SIMON.

(Supreme Court, Appellate Division, First Department. November 17, 1905.)

1. LANDLORD AND TENANT—DEFECTS IN PREMISES—INJURY TO TENANT.
    Evidence that a landlord had notice of the defective condition of the roof of an apartment house in time to have repaired it, and that on account of failure to repair it part of the ceiling of an apartment fell and injured the tenant, presented a prima facie case of negligence of the landlord which should have been submitted to the jury.

2. SAME—EVIDENCE.
    Evidence *held* sufficient to justify a finding that the falling of a part of the ceiling of an apartment was due to failure to repair the roof of the apartment house, which was under the control of the landlord, and not to failure to repair the ceiling, which was in the control of the tenant.

3. SAME—CONTRIBUTORY NEGLIGENCE.
    For a tenant, who had paid her rent, to remain in the apartment rented, notwithstanding her knowledge of defects in the roof and that the ceiling sagged somewhat, was not contributory negligence as matter of law, where the landlord was notified of the defects and promised to repair.

Appeal from Trial Term, New York County.

Action by Ida Frank against Hannah R. Simon. From a judgment dismissing the complaint, plaintiff appeals. Reversed.

Argued before O'BRIEN, P. J., and McLAUGHLIN, PATTERSON, INGRAHAM, and LAUGHLIN, JJ.

Theodore B. Chancellor, for appellant.
Harry A. Gordon, for respondent.

LAUGHLIN, J. This is an action by a tenant against her landlord to recover damages for personal injuries sustained through the fall of plaster from the ceiling of the dining room in her apartment. The apartment house is No. 45 East Broadway. It is a five-

story building, with an apartment for one family to a floor. The accident occurred about 6 o'clock in the evening of March, 1902. The plaintiff was tenant of the top floor, and had been since the 1st of May, 1900. She was at the supper table with some of her children, when about three-fourths of the plaster of the ceiling, "with the slats," fell, carrying with it the chandelier, which struck her on the head, inflicting injuries to recover for which this action is brought.

Evidence was introduced in behalf of the plaintiff tending to show that when she first moved into the apartment the ceiling was newly papered; that after about two weeks it leaked whenever it rained or snow melted on the roof; that this condition continued throughout the entire period, except during a few weeks after the defendant at one time caused some repairs to be made; that the defendant was frequently informed that the roof was leaking; that the ceiling was in danger of falling, and at different times she promised to have the roof repaired, but failed to have it properly repaired. The plaintiff testified that her memory was affected by the accident. Her testimony is somewhat contradictory and uncertain concerning the condition of the ceiling shortly before the accident and the giving of notice to the defendant thereof. She, however, testified that "a day," "a few days," or "a few weeks" before the accident she noticed that the ceiling looked "bent," and she says:

"I told Mrs. Simon the ceiling is going to come down. I told her that before the ceiling came down. I cannot remember exactly the date. A few days before I noticed that the plaster is bending down in the paper. I told her myself a few weeks before."

Then, in answer to a question as to whether it was a few days before or a few weeks before the accident that she notified her, she said:

"I cannot remember exactly. I seen the plaster going in in the paper, and I told Mrs. Simon that the ceiling will fall down some of these days; and she said she would have it fixed."

. She was then asked when she told the defendant that, and she answered she did not remember. She was then asked whether it was two or three days, or how long, before, and she answered:

"I do not remember. I remember a few days before, I think."

She further testified that she told the defendant personally, and also sent word by her daughter, and the defendant said she would fix it; that the water generally came into all the rooms, and she had noticed it come through into the dining room several times. The plaintiff further testified that "it used to rain in all the time"; that she noticed water coming into the dining room more than a week before the accident; that a few weeks before the accident was the first time that she notified the defendant that water was leaking through into the dining room, and at that time the defendant promised to fix the roof; that her complaint was of the roof, and that the defendant promised to fix the roof. It further appears by the testimony of plaintiff and her daughter that whenever it rained they were obliged to put pans on the floor, tables, and beds to

catch the water that leaked through. A tinsmith and roofer employed by the defendant to repair the roof shortly after the accident testified that he could stand in the dining room and look through to the sky, and in answer to the question, "Was there an attic or air chamber between this ceiling and the roof?" he said:

"There was only small beams there. Those beams were rotted away. I could not have put in a nail. The covering immediately over the beams was boards. The boards was rotted away. Over the boards was tin. The tin was very bad, in a very bad condition."

One of the plaintiff's daughters also testified that the water leaked through into the dining room prior to the accident; that the defendant would fix it and it would leak again; that she frequently informed the defendant that water was leaking through the ceiling, and requested her to fix the roof. Another daughter of the plaintiff testified that she notified the defendant many times prior to the accident that the roof was leaking and water was coming through the ceiling, and asked her to come up and look at it and have the roof repaired; that a few months before the accident was the first time she remembered speaking to the defendant about it; that her mother often met the defendant, and after that the defendant had the roof fixed once; but that "the roof was in such a bad condition that it stopped for awhile and then started again." In answer to a question propounded by the court this witness also said:

"We told her to come up and look at the ceiling and the condition the ceiling was. It was always hanging."

It was admitted by the pleading that the roof was maintained by the defendant in common for the benefit of all the tenants, and was not demised, but was under the exclusive control and care of the defendant, and that no one other than the defendant "had any right to repair said roof, or change or interfere with the same in any way." We are of opinion that the plaintiff made out a prima facie case of negligence on the part of the defendant and freedom from contributory negligence on her own part which entitled her to have the case submitted to the jury.

The learned counsel for the respondent appears to seriously contend that the accident was caused by a failure to repair, not the roof, but the ceiling, and that, as this was under the dominion of the tenant and the landlord had no duty to perform in that regard, there can be no recovery. The difficulty with this contention is that the facts not only justified, but fairly required, another inference. The jury would have been warranted in finding that the only defect in the ceiling was caused by the water which came through the roof; that the ceiling would not have fallen, but for the neglect of the landlord to repair the roof; that the roof was in such a bad state of repair that water came through on the occasion of every rainstorm; that the defendant had actual, as well as constructive, notice of these facts, and had notice of the dangerous condition of the ceiling caused by the roof a sufficient time before the accident to have enabled her in the exercise of reasonable care to repair the roof.

Negligence on the part of the defendant could fairly be inferred from this evidence.

We are also of opinion that it cannot be said as matter of law that the plaintiff was guilty of contributory negligence in remaining in the apartment or failing to have the plaster removed or repaired. Even though some of the plaster, at times when the water was leaking through it, may have appeared to be hanging or sagging, this did not necessarily indicate that it would fall if the cause were removed by making the necessary repairs to the roof to prevent its leaking in the future which the landlord appears always to have promised to do. In determining whether the plaintiff was guilty of contributory negligence in continuing to occupy the apartment of the defendant, her conduct must be weighed in the light of the surrounding circumstances, including the fact that she had paid for the use of the apartment and might be unable to obtain or pay for the use of another. The jury might well find on this evidence that it was not an improvident act for the plaintiff to remain in the apartment.

It follows, therefore, that the judgment should be reversed, and a new trial granted, with costs to appellant to abide the event. All concur.