TOOTLE THEATRE COMPANY, Respondent, *v.* SHUBERT THEAT
RICAL COMPANY, Appellant.

First Department, December 15, 1916.

Landlord and tenant — action for balance due under lease — defenses —
surrender of premises — constructive eviction — questions of fact —
evidence — delivery of keys by tenant — duty of landlord not intending to accept surrender to indicate such intention.

In an action to recover the balance due under the lease of a theatre building by the plaintiff to the defendant the latter claimed a constructive
eviction followed by a surrender of the leased premises.   It appeared
that the defendant, through its agent, had delivered the keys of the
building to the plaintiff and there was evidence that the defendant had
failed to keep the building in repair, pursuant to the terms of the lease.
*Held*, that the questions as to whether or not there had been a surrender
of the premises and a constructive eviction should have been submitted
to the jury.

The fact that the plaintiff refused to accept surrender one month after the delivery of the keys by the defendant's agent does not establish conclusively the absence of an acceptance. Nor does the mere retention of the keys show conclusively that there was an acceptance of the surrender but it is some evidence of acceptance.

The plaintiff, having knowledge that the defendant had abandoned the premises and had turned over the keys with the purpose of surrendering possession, if it did not intend to accept the surrender, it was incumbent upon it within a reasonable time to do some act indicating that intention.

APPEAL by the defendant, Shubert Theatrical Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 31st day of January, 1916, upon the verdict of a jury rendered by direction of the court, and also from an order entered in said clerk's office on the same day denying defendant's motion for a new trial made upon the minutes.

*Charles H. Tuttle,* for the appellant.

*Francis S. Bangs,* for the respondent.

DAVIS, J.:

In this case a verdict was directed for the plaintiff and judgment entered thereon for $15,694.04. Exception was taken to the direction and the court's action in that regard is here for review.

The complaint sets up two causes of action. The first cause of action is on a judgment obtained in Missouri by plaintiff against the defendant for $4,000, the amount of installments of rent due for the months of March, April, May, June, July and August, 1913, under a written lease of the Tootle's Theatre, St. Joseph, Mo. The second cause of action was for $10,000, the amount of rental due from September 1, 1913, to and including November 1, 1914.

The theatre in question had been rented by the plaintiff to the defendant for a term beginning January 1, 1911, and ending June 1, 1916, at an annual rental of $8,000 payable monthly in advance.

The answer set up three separate defenses and a counterclaim. At the trial the issues raised by the first and second

defenses were the only ones litigated. These two defenses were constructive eviction followed by a surrender of the leased premises.

The defendant took the affirmative at the trial. At the close of defendant's case the plaintiff moved for a directed verdict. The defendant consented that the court direct a verdict on the first cause of action ($4,000), and for $2,000 upon the second cause of action, which was the rental for October, November and December, 1913, defendant conceding that it remained in possession of the premises during those months down to December sixth, but asserting that it abandoned the premises on the latter date and surrendered them to the plaintiff. The court, however, directed a verdict for the plaintiff for the full amount claimed in the second cause of action. Thereupon the defendant's attorney excepted to the direction of the verdict and made the following request: "The defendant excepts to the direction of a verdict, and ask that the issue be submitted to the jury, first, as to whether on the 6th day of December, 1913, by the surrender of the keys and the taking of them by the plaintiff, and no action on the part of the plaintiff until the 5th of January following there was an acceptance of the surrender made by the defendant, and a consequent discharge of the defendant from its obligations under the lease." This motion was denied and exception was taken. A second request made by the defendant was as follows: "And secondly, to submit to the jury the issue as to whether or not the condition of the premises in December or at the end of November, 1913, was such as to constitute a constructive eviction of the defendant by reason of which the defendant was discharged of its obligations under the lease after the date of the abandonment of the premises." This motion was also denied and an exception taken.

The defendant claims (1) that it surrendered the premises on December 6, 1913, and that the plaintiff accepted the surrender; (2) that there was a constructive eviction of defendant as a result of which the defendant was no longer liable under the lease after its abandonment of the premises.

The evidence shows that on December 6, 1913, Herbert E. Lynch, defendant's house manager, turned over the keys of the

theatre to the plaintiff under instructions from the defendant with the following communication: "I beg to advise you that I have been instructed to close the Tootle Theatre, and as I am no longer in the employ of the Shubert Theatrical Company I am returning herewith the keys of the Tootle Theatre."

The plaintiff kept the keys and made no communication to the defendant concerning the keys or the premises until January 5, 1914, a month later, when it wrote defendant as follows: "Some days since Mr. Herbert E. Lynch, your agent in charge of the Tootle Theatre in this city, notified this company that he was no longer employed by you and that he had been instructed to close the Tootle Theatre and to surrender up the keys, which he accordingly did. This is to advise you that the Tootle Theatre Company does not in any sense release your company from its obligations to pay rent under its lease with this company. We shall expect you to continue to pay rent in strict accordance with the terms of that lease."

The fact that plaintiff refused to accept surrender one month after the delivery of the keys does not establish conclusively the absence of acceptance. There may have been an acceptance before January fifth to be implied from all the circumstances of the case. Nor does the mere retention of the keys show conclusively that there was an acceptance of the surrender, but it is some evidence of acceptance, capable, of course, of being rebutted. (2 Reeves Real Prop. 919, § 652; *Thomas v. Nelson,* 69 N. Y. 118.)

It is fairly inferable from the plaintiff's letter that it knew that the defendant had abandoned the premises and had turned over the keys with the purpose of surrendering possession of the premises to the plaintiff. Under such circumstances, if the plaintiff did not intend to accept the surrender, it was incumbent upon it, within a reasonable time, to do some act indicating that intention. If it delayed action in this respect beyond a reasonable time, an acceptance of the surrender might be implied from that delay. Taking into consideration the relation of the parties, their apparently irreconcilable disputes about the physical condition of the premises, the refusal or neglect of the plaintiff to make repairs demanded by defendant, did the retention of the keys by the plaintiff without giv-

ing any sign of a refusal to accept the surrender, indicate an intention on its part to retake the premises and terminate the relation of landlord and tenant? These questions should be determined by the jury, and in directing a verdict we think the court erred. (2 Underh. Landl. & Ten. § 710; 2 Reeves Real Prop. 919, § 652.)

We now come to the question of whether the court should have submitted to the jury the question of constructive eviction. The defendant claimed that the plaintiff violated its covenant to repair as a result of which the theatre was rendered untenantable and the defendant was deprived of the beneficial use of it.

The particular covenants alleged to have been broken by the landlord are as follows: "*First.* The premises and property above described are to be delivered to the parties of the second part on the 1st day of January, 1911, in a good state of repair, and the exterior of said auditorium shall be kept in a good state of repair by the party of the first part, during the entire period of this lease."

"*Thirteenth.* The party of the first part shall at all times keep all the structural parts of said building in complete repair."

The demised premises were a part only of the building. There were other tenants, and certain parts of the building were used in common by all of the tenants. The landlord, therefore, remained in control of these parts used in common, and it was its duty to keep them in proper repair. (*Dollard* v. *Roberts,* 130 N. Y. 269; *Tallman* v. *Murphy,* 120 id. 345; *Frank* v. *Simon,* 109 App. Div. 38.)

There was evidence from which a jury might properly infer that the landlord had failed to keep in repair the structural part of the building, such as the stage, the roof of the auditorium, the windows and staircases, the plumbing underneath the floors, and the walls. There was some testimony to the effect that the roof leaked over the stage and over the auditorium; that the rain and water from melted snow came through into the auditorium, and there was a fair question for the jury to decide whether or not these defects existed through the landlord's fault and were such as to render the premises

untenantable for the purpose for which they were leased, or were such as to interfere with their profitable use. In the then state of the evidence on this point of constructive eviction it was error for the court to direct a verdict for the plaintiff.

The judgment and order should be reversed and new trial granted, with costs to the appellant to abide the event.

CLARKE, P. J., LAUGHLIN, DOWLING and PAGE, JJ., concurred.

Judgment and order reversed and new trial ordered, with costs to appellant to abide event.