WILLIAM A. HALBE, Appellant, *v.* SAMUEL ADAMS and JOHN FLANIGAN, Respondents.    (Action No. 1.)

First Department, March 9, 1917.

Landlord and tenant — action for rent — equity — counterclaim seeking reformation of lease because of alleged mistake — proof not establishing right to reformation of instrument — mistake of counsel as to legal effect of instrument — practice — judgment on equitable counterclaim before trial of other issues.

Action by a landlord to recover rent payable under a lease to the defendants who at the time the lease was executed were copartners. It appeared that the lease stated that the lessees intended to organize a corporation to carry on their business and the lessor consented that they might assign the lease to such corporation when formed; but there was nothing in the lease itself which relieved the original lessees from liability for rent. The defendants, as a separate defense constituting an equitable counterclaim, alleged that there was an oral agreement entered into before the execution of the lease whereby the lessor agreed that the lessees on assigning the lease to the corporation should be relieved from personal liability and that the lessor would accept and recognize the corporation as the sole lessee of the premises. It was further alleged that by mistake the lease did not contain said release provision, and judgment is demanded that the lease be reformed in this respect by

embodying therein a release of the defendants from personal liability and a statement that the landlord accepts the corporation as the sole lessee. Evidence examined, and *held*, that the lease itself and the conduct of the parties after its execution rendered the oral agreement extremely improbable, and that the judgment reforming the lease should be reversed and the counterclaim dismissed upon the merits.

Courts of equity do not grant the high remedy of reformation upon a probability, or even upon a mere preponderance of evidence, but only upon a certainty of error.

All prior and contemporaneous negotiations and oral promises are conclusively presumed to be merged in the written contract, and the rule is the same in law and in equity. It is only where the scrivener fails by mistake to express the actual agreement of the parties that equity will reform the instrument to conform it to the real contract as made, and will receive parol evidence to prove what the contract actually was upon which the minds of the parties met.

Said lease will not be reformed merely because of a mistake of the defendants' attorney in giving them advice as to the legal effect of the language used.

The Special Term in directing final judgment of reformation to be entered with costs, although the issues tendered by complaint were undisposed of, exceeded its power. The court should have made the decision, and the application for judgment should have been made either at the Trial Term at which the last issue was to be tried, or on motion after that trial.

SMITH, J., dissented.

APPEAL by the plaintiff, William A. Halbe, from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of New York on the 28th day of June, 1916, upon the decision of the court after a trial at the New York Special Term of the issues arising upon the equitable counterclaim in the second amended answer.

The judgment appealed from ordered, among other things, that a lease be reformed *nunc pro tunc.*

*George H. Taylor, Jr.,* for the appellant.

*John J. Adams,* for the respondents.

PAGE, J.:

The action is to recover a monthly installment of rent claimed to be due under a written lease of certain premises in the county of New York for a term of twenty-six years from the 4th day of February, 1897. The defendants interposed an amended answer, in which they admitted the making of the lease, and

First Department, March, 1917. [Vol. 176.

that they entered into possession thereunder, and that the rent for which the action was brought had not been paid, but denied the allegations of performance by the plaintiff and his predecessor and non-performance by the defendants, and set forth a separate defense, among others, summarized in the opinion on a former appeal (172 App. Div. 187), to the effect "that at the time of the execution of the lease the defendants were copartners carrying on a dry goods business under the name of Adams & Co.; that they then contemplated the forming of a corporation to take over their business, which involved the acquisition, either by purchase or leasing for a long term, lands of Charles Halbe, for the erection of a large department store thereon by such corporation when formed, and the assumption by it of all the assets and liabilities of the defendants * * *; that this purpose was communicated to Charles Halbe, who assented thereto, and the lease was then executed by the defendants; that it contained the usual covenant against assignments of the same without the written consent of the lessor, but also contained the following provision: 'And whereas the said lessees contemplate the organization of a corporation which shall carry on the business which they design to conduct on the premises hereby demised, the lessor now hereby consents that in that event the lessees may assign this lease to such corporation when formed.'" A reply was served, and a motion made by the defendants for judgment on the pleadings, which was denied and an appeal taken to this court. The defendants then claimed under the facts alleged that they were released from their covenant to pay rent. This court in its opinion stated: "It has long been settled that neither the consent of a landlord to the assignment of a lease nor the acceptance of rent from an assignee of the original tenant releases the latter from his covenant to pay the rent." (Citing authorities.) "Something more than this must be shown. It must appear, in addition thereto, that there was an express agreement by which the lessee was released from his covenant to pay the rent, or facts shown from which such agreement can be implied." (Id. 189.) And, therefore, held the defense insufficient in law.

The defendants then served a second amended answer, in

which the deficiency pointed out in the opinion is sought to be cured by setting forth facts as a defense and counterclaim, in which, after substantially realleging the defense set forth in the first amended answer, there is affirmatively alleged that there was an oral agreement between the original parties to the lease which preceded the execution and delivery of the lease, to the effect that upon the organization of the corporation contemplated by the defendants, which corporation should assume all the liabilities and assets of the defendants, and should undertake to expend a large sum of money to improve the premises by erecting a large department store and business upon the demised premises, and should take an assignment of the lease and assume all the obligations thereof, then upon the happening of those events, the defendants individually should be discharged of all liabilities under the lease and the corporation should be accepted and recognized as sole lessee of the premises. It is alleged that by mistake the lease did not contain the said release provisions but did contain the above recited clause consenting to the assignment of the lease to the proposed corporation. It is then set forth that the corporation was formed, took over defendants' assets and assumed their liabilities, the defendants assigning the lease to the corporation whose board of directors duly assumed the obligations of the lease and by resolution released the defendants therefrom; that the lessor approved the plans and specifications of the building and authorized the corporation to proceed with the construction thereof, which it did, completing the building at large expense; that the defendants having fully performed their obligations the landlord has forever released them and recognized the corporation as tenant. The judgment demanded is that the lease be reformed by striking therefrom the clause above quoted, consenting to the assignment of the lease to the corporation, and inserting in place thereof the following:

"And whereas the said lessees contemplate the organization of a corporation which shall carry on the business which they design to conduct on the premises hereby demised, it is agreed that in the event they organize said corporation, which shall assume all of the assets and liabilities of said lessees, take over and accept an assignment of this lease for the entire unexpired term

thereof; undertake to expend a large sum of money in excess of the sum mentioned herein for and in and about the improvement of the within demised premises by the erection thereon and on the contiguous property now sought to be acquired by said lessees of a large department store and business thereon, assume all of the obligations of said lessees under and by virtue hereof, that then and in those events the said lessor hereby consents that the lessees may assign this lease to such corporation when formed, and will and hereby agrees to forever release, discharge and relieve said lessees of and from any and all future liability by virtue of this lease, and agrees to and does accept and recognize said corporation as the sole lessee of said premises hereunder; " and for a dismissal of the complaint.

The plaintiff served a reply in which he denied the making of such oral agreement and pleaded as a defense thereto: *First*, the ten years' Statute of Limitations; *second*, laches; *third* estoppel by acquiescence and payment of rent for nineteen years without objection; *fourth*, ratification. A trial of the equitable issues raised by the counterclaim and reply was ordered in advance of the trial of the common-law issues. At the opening of the trial the plaintiff moved to dismiss the counterclaim because of insufficiency in law, in that there was no allegation of a mutual mistake on the part of the original parties to the lease, nor an allegation of a mistake on the part of the defendants accompanied by fraud or other inequitable conduct on the part of the lessor. At the close of the case the plaintiff moved to dismiss the counterclaim for failure of proof, and upon the defenses above set forth. These various motions were denied and exceptions duly taken. The court decided the issues in favor of the defendants and directed the lease to be reformed *nunc pro tunc* as of February 4, 1897, substantially in the language as prayed for in the answer.

In the case at bar we have a lease for a long term of years, carefully prepared, no less than three draft copies having been successively made and submitted to the defendants before it was reduced to its final form. It is complete in its terms, conditions and covenants. In it there are no ambiguities and nothing to suggest omissions or that it is other than it purports to be, the final written agreement embracing the whole engage-

ment of the parties and containing the full extent and manner of their undertaking. In such a case all prior and contemporaneous negotiations and oral promises are conclusively presumed to be merged in the written contract. The rule is the same in law and equity. It is undoubtedly true, as contended by the defendants, that if the parties have arrived at an agreement, and the scrivener, by mistake, fails to express in appropriate language the actual agreement of the parties, equity will reform the instrument to conform it to the real contract as made and parol evidence may be received to prove what the contract actually was upon which the minds of the parties met. (See *Pitcher* v. *Hennessey*, 48 N. Y. 415, 423.) But, as Judge RAPALLO said: "The power of courts of equity to reform written instruments is one in the exercise of which great caution should be observed. To justify the court in changing the language of the instrument sought to be reformed (except in case of fraud) it must be established that both parties agreed to something different from what is expressed in the writing, and the proof upon this point should be so clear and convincing as to leave no room for doubt. Losing sight of these cardinal principles in the administration of this peculiar remedy would lead to the assumption of a power which no court possesses, of making an agreement between parties to which they have not both assented." (*Mead* v. *Westchester Fire Ins. Co.*, 64 N. Y. 453, 455.)

Chancellor KENT, reviewing the early English cases on the question of whether a court of equity could relieve against a mistake as against fraud and whether parol evidence could be received, said: "The cases concur in the strictness and difficulty of the proof, but still they all admit it to be competent, and the only question is, does it satisfy the mind of the court? Lord HARDWICKE said it must be proper proof, and the strongest proof possible; and Lord THURLOW that it must be strong, irrefragable proof, and, he said, the difficulty of the proof was so great that there was no instance of its prevailing against a party insisting that there is no mistake." (*Gillespie* v. *Moon*, 2 Johns. Ch. 597.)

Pomeroy in his Equity Jurisprudence says (3d ed. § 859):

"The authorities all require that the parol evidence of the mistake and of the alleged modification must be most clear and convincing,— in the language of some judges 'the strongest possible,' or else the mistake must be admitted by the opposite party; the resulting proof must be established beyond a reasonable dcubt. Courts of equity do not grant the high remedy of reformation upon a probability, nor even upon a *mere* preponderance of evidence, but only upon a certainty of the error."

To my mind the evidence in the case at bar falls far below the required standard. *First,* we have the circumstance that no claim that an agreement other than that set forth in the written lease was made or contemplated until after it was suggested by this court on the last appeal that "It must appear, in addition thereto, that there was an express agreement by which the lessee was released from his covenant to pay the rent, or facts shown from which such agreement can be implied." (172 App. Div. 189.) Then for the first time it was claimed that an oral agreement had been made, and by mistake omitted in the written lease. A memory refreshed by a necessity pointed out by an appellate court may be convenient, but is not convincing. *Second,* the testimony of the two principals who negotiated the lease was not available at the trial. Charles Halbe was dead and Samuel Adams was physically and mentally incapacitated ; therefore, the entire proof rests upon the testimony of the attorney who drew the lease as to occurrences and conversations which took place nineteen years ago. And in one of the few instances where the witness purports to give Halbe's words, the witness stated that the building to be erected would be additional security. Halbe replied: "Well, the building is all right and I feel satisfied with that, but I also like Flanigan," and again Halbe said: "Flanigan would have been good enough for me." *Third,* the acts and declarations of the parties as evidenced by documents are inconsistent with the existence of an agreement releasing the defendants from liability on the lease upon its assignment to the corporation. In the will of Charles Halbe made March 10, 1911, he provides: "I do hereby give, devise and bequeath unto my son William Alexander Halbe, all my real estate situated on the

west side of Sixth Avenue between 21st and 22nd Streets, *now leased* to Adams & Company, and *now occupied* by O'Neill-Adams Company  *  *  *"

Is it reasonable to infer that if he had understood that when the corporation was formed and the lease assigned to it that the corporation had been accepted by him as the tenants under the lease in place and stead of the defendants, who were the members of the firm of Adams & Co., he would thus have discriminated between the present tenants and the present occupants of the premises?

The lease was assigned to and accepted by the corporation on July 18, 1900. Thereafter, and on November 15, 1900, the directors of the corporation, two of whom out of the three were the defendants, adopted the following preamble and resolution:

" WHEREAS prior to the incorporation of this company the leases covering 339 to 355 Sixth Avenue, 104 and 106 West 22nd Street and 105 to 111 West 21st Street were made out in the names of Samuel Adams and John Flanigan. WHEREAS, under the terms of the said leases the said Samuel Adams and John Flanigan became personally liable for the rentals of said leases. WHEREAS said leases have been transferred to the corporation and it is just and proper that said Samuel Adams and John Flanigan be released from personal liability under said leases and that the same be assumed by the company, the president of this company is hereby authorized and empowered to take any steps and to do all things necessary and proper to be done in the premises and deliver on behalf of the company all instruments required in order that said Samuel Adams and John Flanigan be so relieved from liability and that said liability shall fall upon and be and become the liability of this company."

If it had been already agreed between the various landlords and the defendants (for it was shown that an identical clause as to the organization of a company and the assignment of the lease was contained in the various leases) that on their assignment to and assumption by the corporation the defendants should *ipso facto* be released from all personal liability, why this preamble and resolution? Why should the president of the corporation be empowered to take steps, do all things

necessary and deliver all instruments to effectuate an accomplished fact? What the president did in pursuance of the resolution to accomplish its purpose is not disclosed. It clearly shows, however, that four months after the assignment of the lease to the corporation the defendants believed themselves to be personally liable for the rent, a liability from which it was just and proper they should be relieved and which should be assumed by the corporation and it was recognized that further negotiations, acts and instruments were necessary to accomplish that result.

These considerations tend to demonstrate that there was no agreement that upon the assignment of the lease to the corporation the defendants should be relieved from their liability to pay rent.

It is further claimed that the parties understood that the legal effect of the clause consenting to the assignment was to release the defendants from liability. This rests entirely on the testimony of the attorney that he so understood the legal effect and told all the parties that such was the effect. But as we have seen the will of Halbe and the resolution of the directors of the corporation show that such was not the supposition of the parties. The lease was read by the parties and accepted by them as expressing their agreement. The mere fact that a lawyer gave bad advice to the defendants as to the legal effect of the language used and agreed upon is no ground for reformation or defense. (*Garnar* v. *Bird*, 57 Barb. 277, 286; *Wilson* v. *Deen*, 74 N. Y. 534, 535.)

The language adopted by the parties must be construed according to its legal effect and not in accordance with the misapprehension or ignorance of a lawyer. Upon the evidence produced at the trial, I am of opinion that it was proved that the lease as made expressed the full and complete agreement of the parties, and that no mistake that would authorize a court of equity to reform the contract was established. I have considered the case on the merits, but I am further individually of the opinion that the Statute of Limitations (Code Civ. Proc. §§ 388, 397) is a bar to the maintenance of the counterclaim. A majority of the court, however, do not concur in my view. The justice at Special Term directed a final judgment to be

entered, with costs, although the issues tendered by the complaint were undisposed of. This he did not have power to do. He should have made his decision and the application for judgment must be made either at the Trial Term, at which the last ssue was to be tried, or on motion after that trial. (*McElroy v. Floral Park Villa Co.*, 176 App. Div. 106, 108.)

The judgment should be reversed, with costs, the counterclaim dismissed on the merits and the case remitted to the Trial Term for disposition of the remaining issues of fact.

CLARKE, P. J., and DAVIS, J., concurred; SCOTT, J., concurred on first ground; SMITH, J., dissented.

Judgment reversed, with costs, and counterclaim dismissed on the merits and case remitted to Trial Term as stated in opinion. Order to be settled on notice.