OPINION OF THE COURT
Eileen N. Nadelson, J.
*313 Plaintiff instituted this plenary action to recover rents allegedly due under a residential lease several years after defendants vacated the premises. Plaintiff avers that defendants signed a standard lease renewal for their rent-stabilized apartment that was to continue the lease for one year after the expiration of their then current lease. The current lease was due to expire on April 30, 2001. Defendants, however, assert that they never signed the lease renewal form and that, regardless of the questionable renewal, plaintiff released them from all rent obligations.
The questions before the court are whether either defendant signed a lease renewal agreement and, if so, whether plaintiff expressly or implicitly released them from the tenancy established by that lease renewal.
At trial plaintiff introduced the document it maintained was the signed lease renewal. The defendants, mother and adult daughter, denied having seen or signed the document in question. Plaintiff produced evidence of defendant daughter’s signature which the court believes did resemble the signature appearing on the lease renewal form; however, the signature of defendant mother did not resemble any of her known signatures. Plaintiff did not produce a handwriting expert to authenticate the signature, and questioned defendant mother as to whether she ever permitted someone else to sign documents on her behalf, which she vehemently denied. Based on the weight of the evidence, the court cannot reasonably find that defendant mother signed the alleged lease renewal form, and therefore the court holds that defendant mother is not liable for any rent allegedly due under that agreement.
Defendants introduced a document they assert was the written release they received from the landlord when they surrendered possession of the premises. This printed document is in the form of a memo to landlord’s accounting department, and it provides various choices to be selected by placing an “X” in the box next to the chosen selection. The top portion of the document states:
“re: occupant name Rusinova date 5-14-01
“property address 1890 Ocean Ave unit no. A-5”
(For purposes of clarity, the printed words appear in upper case Times New Roman font and the handwritten words appear as italics.)
The selection indicated by the “X” states:
“move-out
*314 “tenant vacated on 4-30 1901 [sic]
“discontinue rent of $628.37 effective 4-30 “other Security deposit will be applied towards arrears.” This document is signed by an agent of plaintiff landlord.
In addition to the above-reproduced document, defendants testified that they were told that they would not be responsible for any rent after they vacated the apartment at the termination of their then current lease. The court also notes that the document introduced by defendants provides a space to indicate that the tenant will be billed a certain amount for a period of time, but this section of the form was not “X”ed.
In response, plaintiff attempted to introduce what it stated was the standard release form it uses for tenants, but because it did not relate to the tenants in this suit the court declined to admit the document.
It has long been settled law in this state, when dealing with assignments of leases, that something more than mere acceptance of an assignment by the landlord must be shown in order to release the original tenant from his lease obligations. (185 Madison Assoc, v Ryan, 174 AD2d 461 [1st Dept 1991].) It must be demonstrated that there was an express agreement by which the lessee was released from his covenant to pay rent, or facts shown from which such agreement can be implied. (Werfelman v Quick, 187 App Div 732 [1st Dept 1919].) By analogy, therefore, when a tenant surrenders possession of leased premises, something more than mere acceptance of the keys by the landlord must be evidenced to release the tenant from further rent obligations.
Although earlier decisions dealing with the surrender of premises have indicated that a landlord’s retention of the tenant’s keys is some evidence of acceptance of surrender (Tootle Theatre Co. v Shubert Theat. Co., 175 App Div 530 [1st Dept 1916]), the courts have never conclusively indicated what other circumstances must be established to demonstrate that the landlord has agreed to release the tenant from future lease obligations.
Courts have held that, if a landlord’s actions indicate an intent to release a tenant, those actions may constitute an implied surrender. (See generally, Ross Realty v V&A Iron Fabricators, Inc., 5 Misc 3d 72 [App Term, 2d Dept 2004].) In this vein, if a landlord waits an unreasonable period of time to demand rent from an out-of-possession *315 tenant, that delay may he considered an acceptance of the tenant’s surrender. (See Gorlin v Hrvatsky Publ. Co., 126 Misc 570 [1st Dept 1926].)
Without question, a written release executed by the parties would constitute an almost irrefutable express agreement to relieve a tenant of all lease obligations. (Werfelman v Quick, op. cit.) However, this court is presented with a document that, on its face, does not state that it is a release. Consequently, the court must decide whether, under all of the facts and circumstances, the document submitted indicates an express intent on the part of plaintiff to release defendants from the lease renewal.
It is undoubtably true that if the parties have arrived at an agreement, and the scrivener fails to express in appropriate language the actual agreement of the parties, equity will reform the instrument to conform to the real contract as made and parol evidence may be received to prove what was intended by the parties. (Halbe v Adams, 176 App Div 588 [1st Dept 1917].) It is equally true that it must appear that there was an express agreement by which the lessee was released from his covenant to pay the rent, or facts shown from which such agreement can be implied. (Halbe v Adams, 172 App Div 186, 189 [1st Dept 1916].)
In the instant case, the parties executed a document that, on its face, states that the lessees vacated the premises on April 30, 2001, and that their rent payments will be discontinued as of that date. Further, even though the document provides for the lessees to be responsible for future rent payments, that section is not checked off by plaintiff. If this format leaves room for ambiguity, the law is well settled that such ambiguity is to be strictly construed against the drafter (Jersey St. Assoc., LLC v Quality Cleaning Corp., 2002 NY Slip Op 40039[U] [Civ Ct, NY County 2002]), who is plaintiff in this action.
According to the Restatement (Second) of Contracts § 203, an interpretation of a promise or agreement which gives a reasonable, lawful, and effective meaning to all the terms is preferred to an interpretation which leaves a part unreasonable, unlawful or of no effect. By this standard, the most reasonable interpretation of the document under scrutiny is that defendants were not to be held liable for rent payments after April 30, 2001.
In this action, defendants have demonstrated that plaintiff, by its actions, fully intended to accept surrender of the premises from defendants on April 30, 2001, and relieved defendants *316 from any further liability under the alleged lease renewal. Plaintiff accepted the keys from defendants, waited several years after defendants vacated the premises to claim rent due, and provided defendants with a document it created which states that defendants are not liable for rent after April 30, 2001, the period for which this claim is asserted.
Based on the foregoing, this court finds for defendants and dismisses the lawsuit accordingly.