HARMON PUMPELLY and another, Executors of ELIZABETH BRINKERHOFF, deceased, Respondents, *v.* PHILIP PHELPS, Appellant.

The rule, that a vendor, who contracts to sell and convey real property in good faith, *believing he has a good title*, and on discovering it to be defective, for that reason, refuses or is unable to fulfill his contract, is, in an action against him, by the vendee, for the breach, liable for only nominal damages, should not be in any degree extended, but strictly limited to those cases coming wholly and exactly within it. MASON, J.

And where a vendor contracts to sell lands, in which *he knows, at the time, he has not title or the power of conveyance,* he is bound to make good to the vendee the loss of the bargain through his default. Nor, in such case, does it excuse the vendor, that he acted in good faith, and believed, when he entered into the contract, that he should be able *to procure* a good title for his purchaser.

Accordingly, where a trustee, only authorized to convey lands upon obtaining the *written* consent of his *cestui que trust,* contracts, in his own name, to sell them, without having obtained such written consent, although he, at the time, in good faith, expected, that he should be able to procure it, and afterwards, on account of the refusal of such *cestui que trust* to give the written consent, he is unable to make title. *Held* (HUNT, Ch. J., LOTT and DANIELS, JJ., *dissenting*) that, in an action by the purchaser for specific performance, or, in case of inability to perform, for damages, he was entitled to recover of the vendor the difference between the contract price and the value of the land, at the time of the breach.

*Hopkins* v. *Grazebrook* (6 Barn & Cress., 31), followed.

To exempt a party contracting from personal liability, he must so contract as to bind those he claims to represent; and the fact that he describes himself as " trustee" in *signing* the instrument, does not relieve him or change the effect of his agreement. MASON, J.

*Held* (all concurring), no trust appearing in the body of the contract, nor that defendant was making it for any other, or in any representative character, he was personally liable upon it, notwithstanding he added to his signature the words " trustee, &c."

(This cause was argued January 7th, 1869, and decided March 18th, 1869.)

THE action was brought to compel the specific performance of a contract to convey land, or to recover damages alleged to have been sustained by the original plaintiff, by reason of the defendant's refusal to perform.

The answer alleges, that the defendant never was the individual owner of the land in question, and never had any interest in it, except as trustee of Catharine W. Van Rensselaer, under a deed of trust, which gave the defendant no authority to sell the land in question, without the written consent of Mrs. Van Rensselaer; that, at the time of the contract, the plaintiff, and her agent who negotiated it, knew the nature of the defendant's interest and his power under the deed of trust; that the defendant has been always willing

to convey, but Mrs. Van Rensselaer has absolutely refused her consent to such conveyance.

The facts disclosed on the trial are as follows:

On the 13th of June, 1849, the defendant, acting as the trustee of Catharine W. Van Rensselaer, the wife of Cornelius G. Van Rensselaer, agreed to sell and convey to Elizabeth Brinkerhoff, on the 15th day of July, following, lot No. 82, in Bleecker and Lansing's patent, in the town of Stratford, in the county of Fulton, at seven shillings per acre. The lot was to be surveyed, at the expense of the estate, for whom the defendant was acting, and paid for accordingly. On the execution of the agreement (June 13, 1849), $318.25 was paid by the plaintiff, on account of the purchase money.

The lot proved to contain eight hundred and thirty-five acres. After the survey was completed, the plaintiff tendered the balance of the purchase money and demanded a warranty deed of the lot. The defendant declined to comply with this demand, for the reason, that Mrs. Van Rensselaer had positively refused her consent to any conveyance of the land to the plaintiff.

And it appeared, that by the provisions of the deed of trust, under which the defendant was acting, it only gave him power to convey lands, belonging to the trust estate, upon the written assent of Mrs. Van Rensselaer, the *cestui que trust*.

At the time fixed for the delivery of the deed in the contract, the land was worth $2,000.

The lands, mentioned in the contract, were part of the estate held in trust by the defendant, under an appointment in 1841, by the late Court of Chancery, as the successor of Julius Rhoades.

Very soon after the appointment of the defendant as trustee, Mrs. Van Rensselaer told him that he need not consult her about the sale of any of the lands belonging to the trust estate, but to confer with her husband on the subject, and to what they should agree upon, she would give the required assent.

The defendant, relying upon this assurance, acted upon it,

and prior to making the agreement with the plaintiff, had sold and conveyed many parcels of land, to the deeds for which Mrs. Van Rensselaer assented, not having in any case objected to what her husband and the defendant thought proper to be done.

The defendant, in this case, made the agreement with the plaintiff, with the concurrence of Cornelius G. Van Rensselaer, not suspecting any unwillingness on Mrs. V.'s part to assent to it, but believing she would do so. The defendant repeatedly requested her to assent to the conveyance to the plaintiff, which was refused, for the reason that she would assent to no deed to the plaintiff, upon any terms whatever. The reasons for this refusal were personal to Mrs. Van Rensselaer, and were in no respect instigated or caused by the defendant. Finding it impossible to persuade Mrs. Van Rensselaer to consent to the deed, agreed to be given to the plaintiff, the defendant afterwards sold and conveyed the land to another person, with the assent of Mrs Van Rensselaer, for $1,000. The land came to the sum of $730.62, in the sale to the plaintiff, at the price fixed by the contract. At the commencement of the action, the defendant offered to pay back so much of the purchase money, as had been paid, and costs.

The justice, by whom the cause was tried, ruled that the plaintiff was entitled to recover, as damages, the difference between the value of the land and the price to be paid for it, with some directions as to interest, not now material, and directed a verdict for the plaintiff for $3,378.42, subject to the opinion of the court at General Term, upon a motion for judgment, to be made by the plaintiff. The General Term affirmed the ruling at Circuit, and the defendant appeals.

Mrs. Brinckerhoff having died, pending the appeal, her executors have been duly substituted as appellants.

This case has been twice tried. On the first trial, the defendant succeeded, and a new trial was granted. (24 Barbour, 100). On the second trial, the plaintiff prevailed, and

the judgment in her favor was affirmed at the General Term (43 Barbour, 469).

In the contract of sale, the defendant is no where described in the body of the contract as the trustee of any one, but it says: " I acknowledge the receipt of money, and I agree to sell and convey, &c."  The contract is signed " Philip Phelps, Trustee, &c. ; " and there is nothing in it to intimate, of whom he is trustee.  Nor is there any evidence in the case to show, that plaintiff knew anything of this defect in the defendant's title.

*John H. Reynolds*, for the appellant, cited, on the question of personal liability of the defendant upon the contract, *Bank of Genesee* v. *Patchin Bank* (19 N. Y., 312); *Olcott* v. *Tioga R.R. Co.* (27 N. Y., 546).  As to the measure of damages, he cited (Sedgwick on Damages, 189, 190); *Baldwin* v. *Munn* (2 Wend., 399, 405); *Peters* v. *McKeon* (4 Denio, 546); *Conger* v. *Weaver* (20 N. Y. R., 140, 146); (Mayne on Damages, 93, 94); *Staats* v. *Ten Eyck* (3 Caines, 111); *Wild* v. *Fort* (4 Taunton, 334).

*Samuel Hand*, for the respondents, on the question of personal responsibility, cited *Moss* v. *Livingston* (4 Comstock, 208); *De Witt* v. *Walton* (5 Seld., 571); *Bay* v. *Gunn* (1 Denio, 108); *Bush* v. *Cole* (28 N. Y., 261); *Taft* v. *Brewster* (9 Johnson, 334); *White* v. *Skinner* (13 Johnson, 307); *Burwell* v. *Jackson* (5 Selden, 535); *White* v. *Madison* (26 New York R., 124).  As to the measure of damages, he cited *Hopkins* v. *Grazebrook* (6 Barn. & Cr., 31); *Bush* v. *Cole* (28 N. Y., 261); *Lock* v. *Furze* (Exch. Chamber, Law Rep. Common Pleas, vol. 1, 441); *Hopkins* v. *Lee* (6 Wheaton, 109, 118); *Robinson* v. *Harman* (1 Exchequer R., 849); *Hill* v. *Hobart* (16 Maine, 164, 169); *Fletcher* v. *Button* (6 Barbour, 650, 1); *Trull* v. *Granger* (4 Selden, 115); *Lewis* v. *Lee* (15 Indiana, 499); *Dean* v. *Raseler* (1 Hilton C. P., 420); *Bitner* v. *Brough* (11 Penn. St., 127); *McNair* v. *Crompton* (35 Penn. St., 23); *Graham* v. *Hackwith* (1 A. K. Marsh., 429); *Gerault* v. *Anderson* (2 Bibb, 543); *Wilson* v. *Spencer* (11 Leigh, 261); *Driggs* v. *Dwight* (17 Wend., 74); *Nurse* v. *Burns* (Thos. Raym., 77.)

MASON, J.   There has never seemed to me to have been
any very good foundation for the rule, which excused a party
from the performance of his contract, to sell and convey lands,
because he had not the title, which he had agreed to convey.
There seems to have been considerable diversity of opinion
in the courts, as to the grounds, upon which the rule itself is
based.

In England, the rule seems to have been sustained upon
the ground of an implied understanding of the parties, that
the parties must have contemplated the difficulties attendant
upon the conveyance.   In the leading case on this subject
of *Flureau* v. *Thornhill* (2 W. Black., 1078), BLACKSTONE, J.,
said: " *These contracts are merely upon condition, frequently
expressed, but always implied, that the vendor has a good
title.*"

While, in this country, the rule is based upon the analogy
between this class of cases and actions for breach of covenant
of warranty of title, *Baldwin* v. *Munn* (2 W. R., 399); *Peters*
v. *McKeon* (4 Den. R., 546).   The rule of damages, in an action
for a breach of covenant of warranty of title is settled to be
the consideration paid, and the interest; and yet this is an
arbitrary rule, and works great injustice many times; and
the courts met with the greatest embarrassment in settling it.
These difficulties were considered, and well expressed, in the
leading case in this State of *Staats* v. *The Ex'rs of Ten Eyck*
(3 Caines' R., 115), in which the court said: " To find a rule
of damages, in a case like this, is a work of difficulty; none
will be entirely free from objection, or will not, at times,
work injustice.

To refund the consideration, even with the interest, may
be a very inadequate compensation, when the property is
greatly enhanced in value, and when the money might have
been laid out to equal advantage elsewhere.   Yet to make
this increased value, the criterion, where there has been no
fraud, may also be attended with injustice, if not ruin.

A piece of land is bought, solely for the purpose of agri-
culture, and, by some unforeseen turn of fortune, it becomes

the site of a populous city; after which an eviction takes place.   Every one must perceive the injustice of calling on a *bona fide* vendor to refund its value, and that few fortunes could bear the demand.   Who, for the sake of one hundred pounds, would assume the hazard of repaying as many thousands, to which value the property might rise, by causes unforeseen by either party, and which increase in worth would confer no right on the grantor to demand a further sum of the grantee ?"   There is still another class of cases, where the rule of simply refunding the purchase money and the interest operates with great hardship and injustice upon the purchaser. A purchases of B a city lot, for the purpose of building himself a dwelling or buildings upon it, and takes from B a full covenant deed of the premises, covenanting to assure, warrant and defend the title.   The buildings are constructed at the cost of thousands of dollars, and then B is evicted by a paramount title, ascertained to be in some one else.   The recovery of the money and six years interest is not a very just or reasonable return in damages, for the law to give to one, who holds a covenant, to make good and defend the title.

The reasons assigned for this rule, in actions for a breach of covenant of warranty of title, can scarcely apply to these preliminary contracts to sell and convey title at a future time. In the latter case, the vendee knows he has not got the title, and that perhaps he may never get it; and if he will go on and make expenditures under such circumstances, it is his own fault; and, besides, these preliminary contracts to convey generally have but a short time to run, and there is seldom any such opportunity for the growth of towns, or a large increase in the value of the property, as there is in these covenants in deeds, which run with the land, through all time.

The Supreme Court of the United States have refused to yield its sanction to this rule, when applied to contracts for the sale of lands, and affirm the doctrine that the reason of the rule, as to contracts for the sale of goods and chattels, applies with equal force to these executory contracts for the sale of lands. (*Hopkins* v. *Lee*, 6 Wheat. R., 109.)   That

HAND — VOL. I        9

rule is, where a party sustains a loss, by reason of a breach of contract, he is, so far as money can do it, to be placed in the same situation, with respect to damages, as if the contract had been performed. (*Robinson* v. *Harman*, 1 Exch. R., 850.) This case of *Hopkins* v. *Lee* (6 Wheat. R.), is cited with approbation in some of the American cases, and the rule there laid down, affirmed.

These views are not presented to induce the court to over-rule or repudiate the adjudged cases in our own courts, upon this subject. They reach back over a period of more than forty years, and have been too long sanctioned to be now repudiated.

I have referred to this matter, simply as furnishing an argument against, in any degree, extending the rule, and as a reason for limiting it strictly, where the already adjudged cases, in our own courts, have placed it. It becomes important, in this connection, to inquire what that limit is. The general rule certainly is, that where the vendor has the title, and for any reason refuses to convey it, as required by his contract, he shall respond in law for the damages, in which he shall make good to the plaintiff, what he has lost by his bargain not being lived up to. This gives the vendee the difference between the contract price and the value at the time of the breach, as profits or advantages, which are the direct and immediate fruits of the contract. (*Griffin* v. *Colver*, 16 N. Y. R., 489; *Durkee* v. *Mott*, 8 Barb. R., 423; *Underhill* v. *Gas Light Co.*, 31 How. Pr. R., 37; *Masterton* v. *Mayor, &c., of Brooklyn*, 7 Hill R., 61, 69.) Where, however, the vendor contracts to sell and convey, in good faith, believing he has a good title, and afterwards discovers his title is defective, and for that reason, without any fraud on his part, refuses to fulfill his contract, he is only liable to nominal damages for a breach of his contract. (*Baldwin* v. *Munn*, 2 Wend. R., 399; *Peters* v. *McKeon*, 4 Denio R., 546; *Conger* v. *Weaver*, 20 N. Y. R., 140.) The rule is otherwise, however, where a party contracts to sell lands, which he knows, at the time, he has not the power to sell and convey;

and, if he violates his contract in the latter case, he should
be held to make good to the vendee the loss of his bargain,
and it does not excuse the vendor, that he may have acted in
good faith and believed, when he entered into the contract
that he should be able to procure a good title for his pur
chaser. (2 Parsons on Contracts, 503, 504, 505 ; *Hopkins* v.
*Grazebrook*, 6 Barn. & C., 31 ; *Driggs* v. *Dwight*, 17 W.
R., 74 ; *Bush* v. *Cole*, 28 N. Y. R., 261 ; *Lock* v. *Furze*,
Exch. Ch. Law Rep. Com. Pleas, 1 vol., 441 ; *Robinson* v.
*Harman*, 1 Exch. Rep., [Wels., Hurlst. & Gordon] 849 ; *Hill*
v. *Hobart*, 16 Maine R., 164 ; *Fletcher* v *Button*, 6 Barb.
R., 650 ; *Trull* v. *Granger*, 4 Seld. R., 115 ; *Hopkins* v. *Lee*,
6 Wheat. R., 109 ; *Burwell* v. *Jackson*, 5 Seld. R., 535 ;
*White* v. *Madison*, 26 N. Y. R., 124 ; *Lewis* v. *Lee*, 15 Ind.
R., 499 ; *Dean* v. *Raseler*, 1 Hilt. R., 420 ; *Bitner* v.
*Brough*, 11 Penn. St. R., 127 ; *McNair* v. *Crompton*, 35
Penn. St. R., 23 ; *Wilson* v. *Spencer*, 11 Leigh. R., 261 ;
*Graham* v. *Hackwith*, 1 A. K. Marsh R., 429 ; Dart on Ven-
dors, 447.) This rule, applied to the case at law, sustains
the judgment of the Supreme Court.

The defendant must be held personally liable on this con-
tract. It is essentially his contract. In order to exempt the
contracting party from personal liability, he must so contract
as to bind those he claims to represent. (*Moss* v. *Livingston*,
4 Comst. R., 208 ; *Dewitt* v. *Walton*, 5 Seld. R., 570 ; *Bay* v.
*Gunn*, 1 Den. R., 108 ; *Bush* v. *Cole*, 28 N. Y. R., 261.)

The fact that the party describes himself as trustee, with-
out stating for whom, does not relieve him from personal lia-
bility, or change the effect of his engagement. (*Taft* v.
*Brewster*, 9 J. R., 334 ; *White* v. *Skinner*, 13 J. R., 307 ;
*Dewitt* v. *Walton*, 5 Seld. R., 570 ; *Bush* v. *Cole*, 28 N. Y.
R., 261.) These views lead to the affirmance of the judg-
ment.

Grover, Woodruff, James, and Murray, JJ., concurred
with Mason, J., and were for affirmance.

DANIELS, J. (dissenting.) By the terms of the agreement upon which this action was brought, the defendant himself agreed to sell and convey unto the vendee, Elizabeth Brinckerhoff, the land in controversy. And notwithstanding the facts, that the defendant stated in his agreement, that the land was to be surveyed at the expense of the estate, for which he acted as trustee, and he added to his name, when he subscribed it to the agreement, the term "trustee, &c.," he personally bound himself to the performance of the stipulations, which were contained in it. He, and not the beneficiary of the trust he held, undertook to perform the agreement by the conveyance of the land. It was his agreement, and not hers. And whatever the damages may be, which the plaintiffs are legally entitled to recover, on account of the failure to convey the land, they arose out of the breach of his contract, and consequently constitute a legal demand against him. As to this feature of the case, it is fairly within the ruling which was made in the case of *Dewitt* v. *Walton* (5 Seld., 571).

By the verdict and judgment in this action, the defendant was held to be liable in damages for the difference between the contract price of the land and its fair market value, at the time, when he failed to convey it. Whether such a legal liability was created by the circumstances proven in this action, is the important and more material point requiring consideration, in the disposition of the present appeal.

By the terms of the trust, which the defendant had been appointed to execute, he was authorized and empowered to sell all or any of the lands to which it related, with the assent of Mrs. Catherine Van Rensselaer, to be by her in writing from time to time expressed, if to her and said trustee it should seem to be discreet to make such sales. Soon after such appointment, she informed the defendant, that he need not consult her concerning the sale of any of the trust lands, but that he should confer with her husband on the subject; and whatever they agreed upon, she would give the required consent to. The defendant proceeded in that manner, and,

prior to making the agreement in controversy, sold and conveyed many pieces of land, in the deeds for which she united, making no objection, in any instance, to what the defendant and her husband had thought proper to be done. The agreement in suit was made with the concurrence of Mrs. Van Rensselaer's husband, and without any suspicion of any unwillingness on her part to give her assent to the conveyance provided for in the agreement. On the contrary, the defendant fully believed, that she would give her consent thereto, without delay or hesitation. He afterwards repeatedly requested her to join in the deed of the lands mentioned in the agreement to the vendee, which she always refused to do, declaring that she would not consent to any deed to her, on any terms or conditions whatever. Her reasons for not joining in the deed were of a personal nature, and her refusals were not instigated or caused by the defendant; nor was he accessory thereto. The defendant, finding it impossible to persuade her to consent to the deed he had agreed to give to the vendee named in his agreement, afterwards sold and conveyed the lands in question to another person, for a sum exceeding that which was to have been paid under the agreement with the plaintiff; and Mrs. Van Rensselaer united with him in making that conveyance of them.

From these facts, which were agreed upon at the trial, it distinctly appeared, that the defendant was aware of his inability to convey a title to this land, without the written consent of Mrs. Van Rensselaer, at the time when he entered into the agreement in question. The legal title seems to have been in the defendant as trustee, but his power to convey it depended upon her written assent to the conveyance. But from the assurance he had received from her upon this subject, and her repeated and uniform performance of that assurance, he appears to have become satisfied, at the time, when he made the contract with the plaintiff, inasmuch as it was made with the concurrence of her husband, that Mrs. Van Rensselaer would unquestionably enable him to fulfill his undertaking. This, the case shows, was fully believed and

expected by the defendant. And, as her reasons for withholding her assent were of a personal nature merely, without anything leading the defendant to suspect the existence of them, he had no grounds for any different belief or expectation. Under these circumstances, the defendant cannot be properly charged with such a want of care and caution in entering into the agreement with the plaintiff, as should lead to an impeachment of his good faith in the transaction. He had the express assurance of the beneficiary in the trust, that his contracts of sale should be performed by her, whenever they were made, with the assent and approbation of her husband. And that had always been previously faithfully observed and performed ; which was sufficient to create the conviction, that it would be in all future similar cases. And the case shows, that such a conviction had been produced in the mind of the defendant. When he made the agreement with the plaintiff, he did so, not only believing, that it would be performed by the conveyance of the land, but having such reasons for his belief, as would ordinarily produce it in the minds of intelligent persons, acting prudently and cautiously,

The subsequent sale of the land for an advanced price, cannot have the effect of changing the defendant's relation to this transaction.. For it was only made, after the defendant had found it impossible to persuade Mrs. Van Rensselaer to perform his agreement with the plaintiff. No bad faith or legal misconduct can be attributed to him, on account of what he did towards the conveyance of the legal title to the person, who finally acquired it He had no means of coercing Mrs. Van Rensselaer's written consent to a conveyance to the plain tiff, for she could only legally bind herself, under the terms of the trust, by writing, and that she absolutely refused to do. If she had so far concurred in the performance of the defendant's contract, as to have rendered the plaintiff entitled, as against her, to a specific performance of it in equity, then he would have been legally in fault for joining in a conveyance of the land to another person. But the case shows no

such concurrence on her part, as would have justified a resort to that proceeding.

The defendant was, therefore, not justly chargeable with any want of good faith, either in entering into the agreement with the plaintiff, or in afterwards joining in a conveyance of the land to another person. As to the latter act, when it was performed, he was not entirely a free agent. For, by the refusal of Mrs. Van Rensselaer to consent, in writing, to a conveyance to the plaintiff, and the inability of the defendant, as well as the plaintiff, to enforce a specific performance in equity of her verbal assurance, there was no mode in which the plaintiff could have acquired the title to the land. And, as he could not acquire it, the defendant was bound by the terms of the trust, whenever it appeared to be discreet to himself and his beneficiary, that a sale of it should be made, to execute the necessary conveyance for that purpose.

No good reason therefore exists for questioning the good faith of the defendant in either of these respects, but on the contrary, it was affirmatively made to appear, that his conduct was prudent and cautious, and governed by a well grounded belief, that the contract he made would be literally performed by Mrs. Van Rensselaer. And it was only after that had become impracticable, owing to no act or default on his own part, or over which he could exert any control whatsoever, that he, under the trust he had undertaken, conveyed the land to another person. He was no way in fault for making that conveyance, for even if he had positively declined to do so, it could not have secured the title to the plaintiff. In this respect, this case differs very essentially from those relied upon by the plaintiff's counsel, for in them, the vendor either voluntarily conveyed away his title, or refused to convey to the vendee, when he had the power to do so. (See *Gerault* v. *Anderson*, 2 Bibb, 540; *Graham* v. *Hackwith*, 1 A. K. Marshall, 429; *Lewis* v. *Lee*, 15 Indiana, 499; *Fletcher* v. *Button*, 6 Barb., 650; *Dean* v. *Raseler*, 1 Hilton, 420; *Trull* v. *Granger*, 4 Seld., 115.)

The only fault the defendant can be properly charged with,

if that can, in any legal sense, be characterized as such, is, that he too confidingly relied upon the word of the person, on whose act, his conveyance would be dependent for its validity. Upon this circumstance alone, the plaintiff's right to the damages arising out of the loss of her bargain, must therefore necessarily depend. For, in actions upon contracts for the sale and conveyance of real estate, it is well settled, that such damages can only be recovered, where the failure to convey the land contracted for, arises out of some fault or misconduct on the part of the vendor. It is not sufficient for that purpose, as it is, in contracts for the sale of personal property, that there should be a breach of the contract by a failure to convey the subject of it; but in addition to that, it is necessary, that the failure to perform shall have been produced by the misconduct or bad faith of the vendor. This rule is artificial, and peculiar in its character, and often productive of inconvenience and injustice, but it is too firmly established to admit of any question concerning its authority.

That there was no positive fault or misconduct on the part of the defendant, is clearly manifested by the circumstances under which he acted, when the contract was made. The only fault, that can be imputed to him, is that of a negative character, on account of his failure to ascertain, before he entered into the contract, whether any objection would exist concerning its performance. But it is clear, from the course of the business previously performed by him, that even a very prudent person would have hardly deemed that to be proper. For there was no apparent reason why the assurance, which the beneficiary had always previously performed, should not be equally observed in this instance. The defendant had no grounds for suspecting that it would not be; and it would have been an act evincing some degree at least of distrust, if he had endeavored to procure the special approbation of the beneficiary, when nothing indicating the impropriety of relying upon her general assurance had previously transpired. The defendant, as trustee, held the legal title of the land he contracted to convey, and was dependent upon

no one for his power to convey it, beyond the written assent of the beneficiary, which had been solemnly promised to him. In this respect, the case differs very materially from *Hopkins* v. *Grazebrook* (13 Eng. Com. Law, 100), where the defendant had neither possession nor title, and *Robinson* v. *Harman* (1 Exchequer, Welsby H. and G., 849), in which the defendant's title depended upon the terms of a will, that he appears never to have seen. It was suggested to him, before he entered into the contract to convey, that the will, under which he supposed he had derived title, might have vested the legal title, or the power to lease, in trustees. To which he replied, that there was nothing of the sort; that it was his property out and out, and he alone had the power of leasing it. A representation which, in itself, amounted to a fraud; as it turned out that the estate was devised to trustees, and the defendant's only interest was a right to a moiety of the rents for life. It does not, therefore, fall within the exception to the general rule, which was created by their authority.

No good ground exists for impeaching the *bona fides* of the defendant in this transaction. For, as long as he had the title to the land, and the right to convey it, subject only to the written assent of the person who had promised to join with him in the conveyance, under the precise state of circumstances apparently existing in this case, he cannot be charged with bad faith in entering into the contract he made for the sale. This is evident from the circumstances themselves; and it is well settled by the authorities applicable to them.

In the case of *Jones* v. *Dyke*, cited by Judge DENIO in his opinion in *Conger* v. *Weaver* (20 N. Y., 143), the defendant, as an auctioneer, had sold certain real estate under the belief that the owner had authorized him to sell it, but which turned out not to be the fact. And yet it was held that he was not liable for the damages, &c., occasioned by the loss of the bargain. The same principle in substance entered into and controlled the decision of *Bush* v. *Cole* (28 N. Y., 261). For the theory of that case was, that the defendant had sold the land for less than he had been directed to sell it by the owner,

and he had therefore knowingly violated his instructions in agreeing to make the sale of it which he did. In the case of *Walker* v. *Moore* (21 Eng. Com. Law, 100), it was held, that a person, who professed to sell that which he *bona fide* believed he could sell, though in fact he had no title, was liable only for the expenses of investigating the defective title; and this rule was applied and approved in the decision of the case of *Pounsett* v. *Fuller* (84 Eng. Com. Law, 660). There the defendant erroneously believed he had the power to convey the right he contracted to sell, though the contrary was indicated by the evidence of his title, which was held by himself. And yet, as he acted in good faith, he was exonerated from the claim made against him for the damages arising out of the loss of a valuable bargain. The court held, that "As a layman, he had a fair right to believe he had the power to sell which he professed to have, and therefore his case comes within the qualification of the rule," as expressed in *Walker* v. *Moore* (*supra*). The same rule was declared in *Thompson* v. *Guthries, adm'r* (9 Leigh, 101, 107). It was there held, that in all executory contracts for the conveyance of land at a future time, the established measure of damages is the purchase money. On a covenant to make a good title, where there is no fraud on the part of the vendor, and he sells believing his title to be a good one, or that it can be made so, the rule must be the same. *Wilson* v. *Spencer* (11 Leigh, 261); *Allen* v. *Anderson* (2 Bibb., 415, 16); *McDonnell* v. *Dunlop* (Hardin, 41); *Bitner* v. *Brough* (11 Pa., 127, 129); *McNair* v. *Compton* (35 id., 23, 28); *Baldwin* v. *Munn* (2 Wend., 400); *Peters* v. *McKean* (4 Denio, 546), and *Conger* v. *Weaver* (*supra*), are, in substance, to the same effect.

In the case of *Sikes* v. *Wild* (1 Ellis, Best and Smith, 587), the precise point arose that is now under consideration, under circumstances somewhat more favorable to the claim of the plaintiff than those presented on the present occasion. After examining all the previously decided cases affecting the question, the Court of Queen's Bench held that the damages arising out of the loss of the bargain could not be recovered.

And the case of *Sweem* v. *Steele* (5 Clarke Iowa R., 352), is substantially, in principle, of the same import. The present case is within the sense and spirit of this principle. For it appeared, that the defendant acted in entire good faith in what he did, having the title to the land he agreed to convey, and was only prevented from conveying it by an obstacle, not only unforeseen but unsuspected, without having any reason to expect he would encounter it, and over which he had no control. If the case disclosed any ground, upon which the beneficiary or her estate could be rendered liable over to the defendant for these damages, a different disposition could be made of it, from that which is required by the authorities bearing upon it. But it does not, for her contract with him, and on the faith of which he acted, was for the sale of an interest in lands, and consequently void within the statute of frauds, because it was not reduced to writing and subscribed by her. And no such partial performance of it had taken place as, under the settled rules of courts of equity, would justify a decree for the specific performance of it. Neither does it appear, that the terms of the trust would permit the defendant to reimburse himself for the payment of such damages as are claimed in this case, if the plaintiffs were allowed to recover them.

The judgment should therefore be reversed and a new trial ordered, with costs to abide the event, unless the plantiffs shall, within twenty days after notice of this decision, stipulate to reduce the verdict to the sum of $318.25, the amount actually paid the defendant on the contract, together with interest thereon from the thirteenth day of June, 1849. And in that event, the judgment as so modified, should be affirmed without costs of the appeal to either party.

Hunt., Ch. J. and Lott, J., concurred with Daniels, J., for reversal.

Judgment affirmed.