JOHN GROSSO, Plaintiff, *v.* JOSEPH SPORER, Defendant.

Supreme Court, Niagara Equity Term, October 18, 1924.

Vendor and purchaser — action for specific performance of contract of sale of real estate and for damages in event of defendant's failure to give good title — option in lease given by defendant to plaintiff's assignor provided for sale of prem'ses to lessee for $7,500 — defendant refused to convey for price agreed upon — defendant, not sole owner of premises, unable to convey good title — measure of plaintiff's damages is difference between value at time of breach and contract price — lease constituted good consideration for option — both lease and option assignable.

An owner who contracts to sell lands, which he knows at the time he has not the power to sell and convey, is liable to the purchaser for the d'fference between the contract price and the value of the land at the time of the execution of the contract. It is not a defense that the owner may have acted in good faith and believed, when he entered into the contract, that he could procure a good title for his purchaser.

Accordingly, plaintiff, in an action for the specific performance of a contract of sale of premises and for damages in the event of defendant's failure to give good title, should be awarded a judgment for the difference between the value of the property at the time of the breach and the contract price, where it

appears that the plaintiff became the owner and holder of a lease of the premises which contained an option to purchase at $7,500; that, after demand, defendant refused to convey the premises to the plaintiff at the agreed price; and that specific performance is impossible, since defendant's wife refuses to convey the premises which are held by the entirety.

The lease between the defendant and plaintiff's assignor constituted a good consideration for the option. Both the lease and the option were assignable.

ACTION to compel the specific performance of contract to sell real estate, etc.

*Parker & Parker,* for the plaintiff.

*Cohn, Chormann & Franchot* and *Basil Robillard,* for the defendant.

BROWN, J. In December, 1900, there was executed and delivered to the defendant and his wife a deed conveying to " Joseph Sporer and Christina Sporer, his wife," the premises described in the complaint. By such conveyance the defendant and Christina Sporer, as husband and wife, acquired title to such premises as tenants by the entirety. As such owners they took possession and occupied the same as their home up to the 1st day of June, 1923. On June 1, 1923, the defendant made and executed a written lease of such premises to Attilio DiFiore for the term of one year and one month, at the rental of fifty dollars per month, which DiFiore agreed to pay. In such written lease there is the following clause: " Party of first part (defendant) further covenants that in consideration of the premises and the sum of one dollar now paid by the party of the second part (DiFiore) the receipt whereof is hereby acknowledged, hereby covenants and agrees to sell and convey unto the party of the second part the aforesaid demised premises at and for the sum of Seven Thousand Five Hundred Dollars ($7,500.00), and to make and execute good and sufficient warranty deed with release of all dower rights and free and clear of all incumbrances, and will furnish an abstract, showing the state of the title thereto, within thirty days after the acceptance of this option by the party of the second part, which acceptance shall be made at any time before the last day of June, 1924, and shall be given in writing to the party of the first part by the party of the second part." The lease was executed by both parties thereto by their signatures and seals DiFiore went into possession of the premises, and on the 16th day of October, 1923, duly assigned the lease and option to purchase to George Fiorucci, who went into possession and on the 25th day of October, 1923, duly assigned the lease and option to purchase to the plaintiff, who thereupon went into possession of such premises The monthly rentals as they accrued were promptly paid by the occupants On October

31, 1923, the plaintiff served upon the defendant a written notice signed by the plaintiff, notifying the defendant that he, the plaintiff, was the owner and holder of the lease and option to purchase, and " that I have elected to and hereby do accept the offer made by you in such option and agreement to sell and convey said premises for the sum of Seven Thousand Five Hundred Dollars, and I demand the execution and delivery to me of a warranty deed of said premises, conveying the same to me free and clear of all liens and incumbrances, with release of all dower rights and interest therein, if any, together with the delivery to me of an abstract of title as mentioned in such option to purchase. Before delivery of such deed and title search I am prepared to pay to you the said sum of $7,500.00." Thereupon the defendant refused to sell the property at the price stipulated in the option. About December 13, 1923, the plaintiff tendered to the defendant a deed of said premises and demanded its execution by the defendant and his wife, offering to pay the sum of $7,500 upon the execution and delivery of the deed. The defendant refused to execute the deed, and stated that he had changed his mind about selling the property and would not sell for $7,500. Thereupon this action was brought to compel a specific performance of the contract of sale arising from the option and its acceptance, and for damages in the event the defendant is unable to make good title. The answer of the defendant is a denial of the allegations of the complaint except the allegations as to the making of the lease to DiFiore, including the option and plaintiff's demand and defendant's refusal to convey the premises; the answer also alleges want of consideration for the option.

It is urged by the defendant that the option is a unilateral agreement on the part of the defendant and, never having been accepted by DiFiore, is within the rule that courts of equity will not enforce agreements that are not mutual and binding upon the party seeking to enforce the same, citing *Dittenfars* v. *Horsley*, 177 App. Div. 143; *Levin* v. *Dietz*, 194 N. Y. 376; *Stokes* v. *Stokes*, 148 id. 708; *Wadick* v. *Mace*, 191 id. 1.

The lease constituted good consideration for the option. The lease and option were assignable. Pers. Prop. Law, § 41. The plaintiff by assignment became the owner of the right to accept the option. By his acceptance of the option he personally became obligated to the defendant in the sum of $7,500. The defendant became bound to convey, and the plaintiff became bound to pay the selling price. The defendant could have required the plaintiff to specifically perform. There was no lack of mutuality. The contract was complete, the minds of the parties met, and the

obligation of the defendant to convey became fixed. *Lewis* v. *Bollinger*, 115 Misc. Rep. 221, and cases there cited.

The demand by the plaintiff that the defendant perform by making the conveyance upon payment of the $7,500, the refusal of the defendant to convey, stating that he had changed his mind and would not sell at the contract price, then and there placed the defendant in default, and plaintiff's cause of action was complete. *Ziehen* v. *Smith*, 148 N. Y. 558; *Campbell* v. *Prague*, 6 App. Div. 554.

The defendant having defaulted upon his contract to sell, the plaintiff having fully performed on his part and demanded performance by the defendant, the plaintiff is entitled to judgment. The defendant asserts that his wife and himself own the premises as tenants by the entirety; that he cannot convey the title; that he made the contract to sell in good faith believing that he owned the title; that he is unable to perform owing to the fact that he does not solely own the title, and that the damages for which he must respond consist of expenses incurred by the plaintiff in examining the title, within the rule stated in *Cockcroft* v. *N. Y. & H. R. R. Co.*, 69 N. Y. 201; *Walton* v. *Meeks*, 120 id. 79.

The fact is that the defendant knew in 1900 that his wife, Christina, was named in his deed as one of the grantees; he then knew that he was not the sole owner of the premises; he then knew that he could not sell the premises. The defendant made the lease containing the option in June, 1923. Did he then honestly believe that he solely owned the premises? He stated upon the trial that he had not seen his deed of the premises since 1903, and that he did not know that he did not own the premises until after the commencement of this action. In October, 1923, the defendant refused to perform the option provision, asserting then that he would not sell for the $7,500. In December, 1923, he again declined to perform the option which had ripened into a mutual contract by the plaintiff's acceptance, stating his reason for such refusal to be that the contract price of $7,500 was inadequate. At no time was his refusal placed on the ground that he did not own the premises; at no time previous to the trial has the defendant claimed that his refusal to convey was based upon the fact that he only owned the premises as a tenant by the entirety with his wife. Even in the answer it is not alleged that the defendant in good faith made the lease and option honestly believing that he owned the title, and that he refused to convey for the reason that he did not own the premises. His refusal to perform his contract is placed squarely upon the ground that he will not sell for the $7,500. In view of such fact what foundation remains for the

claim of good faith? The only finding permissible upon the evidence is that the premises were of the value of $14,500 at the time the defendant refused to convey, and that such value was the basis and reason for defendant's refusal to convey. The sole inducing cause of defendant's refusal was the hope of the pecuniary gain to be acquired by evading his contract to sell at $7,500. It will not harmonize with the claim of good faith for the defendant to say in October and December, 1923, that he refused to convey for the agreed selling price of $7,500, and to assert in September, 1924, that he refused because he was unable for want of title, without even alleging in his answer, prepared in April, 1924, such inability as an excuse for non-performance.

The Court of Appeals has said that the general rule is that where a vendor has the title and for any reason refuses to convey it, as required by his contract, he shall respond in law for the damages, and shall make good to the plaintiff the amount he has lost by reason of the breach of the contract. This gives the vendee the difference between the contract price and the value at the time of the breach as profits or advantages which are the direct and immediate fruits of the contract. Where, however, the vendor contracts to sell and convey, in good faith, believing he has a good title, and afterwards discovers his title is defective, and for that reason, without any fraud on his part, refuses to fulfill his contract he is only liable for nominal damages for a breach of his contract. The rule is otherwise, however, where a party contracts to sell lands, which he knows at the time he has not the power to sell and convey; and if he violates his contract he should be held to make good to the vendee the loss of his bargain. It does not excuse the vendor that he may have acted in good faith and believed, when he entered into the contract, that he could be able to procure a good title for his purchaser. *Pumpelly* v. *Phelps,* 40 N. Y. 59.

The defendant has failed to bring himself within the provision of the foregoing rule whereby the plaintiff would be entitled to merely nominal damages. The defendant having yielded to the temptation of pecuniary gain by breaching his contract to convey upon a consideration deemed adequate at the time of entering into the contract, has subjected himself to the rule making the difference between the value at the time of the breach and the contract price the measure of the plaintiff's damage.

The defendant, not having the sole title, specific performance cannot be enforced. The plaintiff must be awarded judgment for the sum of $7,000, together with costs. Let findings be prepared.

Judgment accordingly.