HENRY DAGGETT BULKLEY, Respondent, v. ROUKEN GLEN, INC., Appellant.

Second Department, January 27, 1928.

Vendor and purchaser — marketable title — action by purchaser to compel specific performance, or, in alternative, to recover damages — restrictive covenant against erection of more than one building on plot, which was not mentioned in contract, applies — title tendered was not marketable — covenant in contract that certain street adjoining property had been dedicated to public use, was not in accordance with facts — damages — plaintiff is entitled to return of down payments with interest and reasonable expenses for examination of title — defects were known to defendant and plaintiff may recover loss of bargain as special damage — other items of damages considered — defendant not entitled to reformation of contract.

The defendant contracted to convey certain real property to the plaintiff, but on the closing day the title was rejected by the plaintiff, who now brings this action for specific performance to compel the defendant to convey title in conformity with its contract, or, in the alternative, for damages arising out of the breach of the contract. There existed a restriction against the erection of more than a single detached dwelling house on the plot conveyed. This restriction had never been removed, and an attempted modification authorizing the erection of two dwelling houses is invalid.

The original restrictive covenant was made for the benefit of adjoining vendees, and since it was not specified in the contract between the parties herein, the defendant was unable to deliver a marketable title and the plaintiff was justified in rejecting the title offered.

The contract contained a stipulation to the effect that a certain partly-finished road or street adjoining the property had been dedicated to public use. The road had never been dedicated to public use and would not be available to the plaintiff for use in connection with the property in question, and, therefore, the defendant was unable to deliver a title in conformity with its contract in this respect.

The plaintiff is entitled to recover as damages the down payments made, with interest, and reasonable expenses incurred in the examination of the title. Since the defendant knew of the existence of the restrictive covenant, which was not mentioned in the contract, and knew that the street mentioned could not be used by the plaintiff, the plaintiff is entitled to damages based on the loss of bargain, on the ground that the defendant contracted to convey property in a manner which it knew was beyond its power to convey. The measure of damages for loss of bargain was the difference between the market value of the property contracted to be sold and the contract price.

The plaintiff cannot recover the cost of preparing a so-called tentative sales map, since that map was prepared before the contract was signed.

The plaintiff may recover brokerage fees and expenses paid to purchasers on the sale of two lots which was made before the closing date, since the defendant authorized the plaintiff to make the sale subject to the closing of the main title. But the plaintiff cannot recover the deposit made by the purchasers, which plaintiff returned to them.

The defendant is not entitled to reformation of the contract so as to include the restrictive covenant, and to correct the misstatement as to the street, since the evidence shows that there was not any mutual mistake of fact, but that at all times the parties contemplated that the plaintiff would divide the plot into lots for sale purposes.

APPEAL by the defendant from a judgment of the Supreme Court, entered in the office of the clerk of the county of Westchester on the 10th day of May, 1927.

*Burton C. Meighan,* for the appellant.

*Harold B. Elgar,* for the respondent.

Judgment, in so far as appealed from, unanimously affirmed, with costs, upon opinion of Mr. Justice TAYLOR at Special Term.

Present — LAZANSKY, P. J., RICH, KAPPER, SEEGER and CARSWELL, JJ.

The following is the opinion delivered at Special Term:

TAYLOR, J. The plaintiff sues to procure a judgment for the specific performance of a contract to convey real estate; or in the alternative, for damages claimed to be (a) payments on account of the purchase price and interest and necessary expenses incidental to the search, and (b) special damages for the loss of the plaintiff's alleged bargain, and otherwise. The agreement was dated April 17, 1926. The land sold was about five acres, of which a considerable part was the so-called plot 33 on a " Map of Woodacres," etc., the property lying in part in New Rochelle and in part in the

town of Mamaroneck; the purchase price was $37,500, of which $5,000 was actually paid in two installments of $1,000 and $4,000, respectively, by the plaintiff; $7,500 was to be paid in cash on closing, and the balance by the plaintiff assuming a mortgage of $25,000 upon the property, which was to be conveyed subject to certain specified restrictions; not including, however, the one hereinafter referred to, affecting plot 33. Upon the adjourned day set for closing (July 1, 1926) each party made the requisite formal tender to the other. The plaintiff rejected the title upon two grounds: (a) That said plot 33 was subject to a restriction that no more " than a single detached dwelling house " with possible outbuildings, should be erected upon the said plot 33, which had a frontage upon the so-called Knollwood Drive of 292.53 feet, such restriction not being mentioned in the contract; and (b) that although the contract provided: " The present Northerly terminus of the partly finished road now running through property of J. J. Saxelby (which road is or may be considered a continuation of Rockingstone Avenue) is immediately contiguous to the southerly boundary line of the property herein to be conveyed. Said unfinished road has been dedicated to public use. Purchaser may connect a road for the use of the property to be conveyed, with said terminus," such dedication had never been had, and that plaintiff might not connect with such terminus a road for the use of the property here involved. A discussion of said objections follows, and in the course of the same I have assumed that the contract is not to be reformed.

1. Among the restrictions imposed by the contract was the following (quoted in material part): " That the said premises shall not be occupied for any purpose other than for a private residence for one family upon any single plot with a street frontage of not less than sixty feet, unless any such plot as shown on map and approved by seller and purchaser, contains less than such frontage. * * * "

The Knollwood Drive frontage of plot 33 referred to was sufficiently long to admit four sixty-foot plots and one fifty-two plus feet in width. Plot 33 was substantially a triangle at the westerly end of the property involved. The southerly or base line of this triangle was about 156 feet in length, its westerly side on Knollwood Drive being, as aforesaid, 292.53 feet, and the easterly side thereof 316.90 feet. Said plot 33 would have contained five plots within the restriction specified in the contract, upon each of which plaintiff or his successors in title might have built a single dwelling house, if no other binding restriction prohibited. The entire Woodacres tract was owned in 1919 by Waldorf-Gill Real Estate Co., Inc.,

which prepared a map of said property dated March 24, 1919, and duly filed August 12, 1919. On August 6, 1919, the said then owner conveyed to one L. Alice Arnold plot No. 30, which deed was duly recorded August 12, 1919, and recited, in effect, that the grantor had caused the said plan or map to be made, and that the grantor intended to convey the lots thereon by deed " containing restrictive covenants on the part of the purchaser therein similar to those herein contained, to the end that the restrictions therein imposed shall inure to the benefit of each and all of the purchasers of such lots and their respective heirs and assigns." One of the covenants in the Arnold deed prohibited the erection of " any building other than a single detached dwelling house * * * upon the said lot of land hereby conveyed, or any part thereof." On January 14, 1921, the same grantor conveyed said plot No. 33 to one Henry W. Sackett, which conveyance gave to him the benefits of covenants of respective grantees named in the several deeds, whether theretofore or thereafter executed, and contained the same covenant as to the single detached dwelling house and possible outbuildings to be erected upon the plot, as was contained in the Arnold deed; the Sackett conveyance also purported to give to him and his successors in title — and, as I determine, upon plain principles, ineffectually — the right to construct two dwelling houses and possible outbuildings on said plot 33, provided they were erected one each side of a drive which the deed stated it was Sackett's purpose to construct through said plot, to certain other property owned by him. When the contract here involved was executed, the defendant had a contract with Sackett to purchase the entire premises here involved, including said plot 33. The defendant actually took title thereto by deed dated May 26, 1926 — before the attempted closing on July 1, 1926. Upon the undisputed facts above recited and others appearing in the record, plot No. 33 on the map of Woodacres, on July 1, 1926, was subject, at least in equity, to the same restriction limiting construction to one dwelling house as was contained in the Arnold deed. (*Tallmadge* v. *East River Bank,* 26 N. Y. 105, 109; *Equitable Life Assurance Society* v. *Brennan,* 148 id. 661, 672; *Silberman* v. *Uhrlaub,* 116 App. Div. 869; *Thompson* v. *Diller,* 161 id. 98; please read also *Todd* v. *North Avenue Holding Corporation,* 121 Misc. 301; affd., 208 App. Div. 854.) The attempted modification of said restriction so as to permit two dwelling houses, to which modification the owner of plot 30, who already had a negative easement in plot 33, was not a party, is absolutely unavailing. (See *McDougall* v. *Schneider,* 134 App. Div. 208.) There is no doubt that the restriction to one dwelling house on plot 33 is enforcible at

the instance of the owner of any other plot in the tract. (Cases *supra.*) Subsequent to the deed to Sackett other purchasers of lots upon the Woodacres map acquired an easement in said plot 33.

I determine that the objection to the title now under discussion was valid and warranted the plaintiff's rejection of the title. I respectfully differ with the suggestion of counsel for defendant to the effect that the Arnold deed did not, in equity, restrict plot 33, so that only one dwelling house could be erected thereon.

2. The undisputed facts demonstrate that the road through the Saxelby property — continuation south of Rockingstone avenue — (the road involved in the second objection to the title above specified) was not dedicated to the public use. Plaintiff's said objection to the title was valid and, like the previous objection, constituted a breach of the contract on defendant's part.

It is not disputed that the defendant is unable to deliver title in accordance with the contract, and, therefore, the plaintiff, although otherwise entitled thereto, may not have judgment for specific performance. He is entitled to the amount of his legal damages flowing from the defendant's said breaches of the contract. That plaintiff is entitled at least to the return of his payments on account of the purchase price, with interest, and to reasonable expenses upon the examination of the title, cannot be doubted. (*Northridge* v. *Moore*, 118 N. Y. 419; *Walton* v. *Meeks*, 120 id. 79; *Schwimmer* v. *Roth*, 111 Misc. 654.) He claims, in addition, the value of his alleged bargain lost, and certain other special damages involved in the transaction of the Barnes contract hereinafter discussed, and also in the preparation of a tentative sales map contemplated by the contract with the defendant. If (a) the seller arbitrarily refuses to perform, (b) knowingly contracts beyond his power, or (c) has been guilty of fraud or bad faith, the purchaser may recover special damages for loss of bargain. (*Schwimmer* v. *Roth, supra; Pumpelly* v. *Phelps*, 40 N. Y. 59, 66, 67; *Cockcroft* v. *New York & Harlem R. R. Co.*, 69 id. 201, 204; *Marsh* v. *Johnston*, 125 App. Div. 597.) The evidence demonstrates that Moody, the executive officer of the defendant, who dealt with the plaintiff, knew that as to the Knollwood Drive frontage (plot 33 aforesaid), the same was subject to the aforesaid restriction prohibiting more than one dwelling house upon that entire frontage of 292.53 feet. This follows from the contents of the defendant's contract with Sackett attached to the defendant's bill of particulars, portions of which appear in the minutes. But if we assume that he was not actually cognizant of the fact of the said restriction, it is clear that he allowed the plaintiff to believe, in effect, that one house might be erected upon each sixty feet of said frontage except as to the northerly

portion thereof upon which one might be erected upon fifty-two plus feet, because of the defendant's approval of the plaintiff's tentative sales map in that respect. Whether the defendant's said officer actually knew of the said restriction and represented that it was not extant, or made such representation not knowing whether it was true or not, the result is legally the same. (For principle, see *Hadcock* v. *Osmer*, 153 N. Y. 604.) From what I have thus far said it must not be inferred that I find that Moody practiced any fraud upon the plaintiff. The determination about to be made is based upon the proposition that the defendant knew of the said restriction and contracted to convey the property in a manner which was beyond its power because thereof. (*Schwimmer* v. *Roth*, *supra.*) The same reasoning applies to the defendant's representation, not founded in fact, as to the dedication to the public use of the unfinished road in the Saxelby property, and that the said purchaser might connect a road for the use of the property to be conveyed, with said terminus. In fact, there had been no such dedication.

Solely because the defendant contracted to convey in a manner beyond its power in each of the two respects indicated, I determine that the plaintiff is entitled to recover also his special damages for loss of his bargain — the difference between the market value of the property contracted to be sold on August 1, 1926, which I find is the sum of $38,500, and the contract price, $37,500 (or $1,000). I fix said damages at said last-mentioned sum. In fixing the valuation of the property I have considered all the facts appearing in the evidence, including the conceded improvements in Knollwood Drive. The plaintiff's bargain was not of great value, in my opinion, but it did have the value found. I determine that the sum of $140, expense of the so-called tentative sales map, does not constitute special damages for the breach of the contract, contemplated by the parties. This map was prepared and the expense thereof incurred before the contract was signed. The contract provided, in effect, that plaintiff might sell the property or portions thereof to others (before taking title himself) and close title on any such sale when the main title was closed. He did sell, with the express approval of the defendant, the southerly two plots, each sixty feet in width, on Knollwood Drive, to purchasers named Barnes, and incurred or paid $328.80, being the reasonable and customary fee of a broker on the sale, and also paid to the Barnes, upon their rejection of the title, their reasonable expenses for searching, attorney's fee and survey, in the sum of $133.49. These two last-mentioned amounts I determine to be recoverable as special damages of the plaintiff, within the contemplation of the con-

tracting parties in the event of a breach. (See 1 Sedg. Dam. [9th ed.] §§ 144–148.) I overrule plaintiff's suggestion that the deposit made by the purchasers under the Barnes contract, which plaintiff returned, and interest thereon is an item of his legal damage; nor is the amount paid to Barnes for digging recoverable. The plaintiff's reasonable expenses upon the main title I fix at the sum of $175. In the above discussion I have taken the contract between the parties at its face value. I have not overlooked that the defendant claims that it should be reformed in effect, so as to provide for a conveyance by defendant to plaintiff of the property in question, subject to the Woodacres restriction, and to a non-dedicated road in the Saxelby property. The evidence clearly demonstrates a consistent purpose on the part of the plaintiff, known to and acquiesced in by the defendant, to develop the property for resale in sixty-foot plots as to the Knollwood Drive frontage, and that the connection of a road with the asserted dedicated street in the Saxelby property was vital to the scheme of development which the plaintiff had in mind.

I dispose of the defendant's counterclaim for reformation by stating that there is no evidence showing mutual mistake, or otherwise providing a legal foundation for the reformation of the contract. (See *Halbe* v. *Adams, No. 1,* 176 App. Div. 588, and cases there cited.) I also overrule the suggestion of the defendant that the relation of attorney and client existed between the defendant's president, who was a competent and experienced real estate man, and the plaintiff, an attorney, and I further hold that there was no inequitable or otherwise improper conduct on the plaintiff's part in his dealings with the said *alter ego* of the defendant. They dealt upon terms of equality in the transaction, each of said persons being well able to take care of himself therein; each did take such care.

In passing I state that I have not overlooked the circumstance that an eminent text writer on real estate titles, who is counsel for a company insuring titles, is said to have intimated that upon the Knollwood Drive frontage more than one house may be built, and that the title company will insure to that effect. Notwithstanding this, while respectful of his said opinion, I determine that the said plot is restricted as above indicated, so that only one dwelling house may be erected upon the entire plot 33 — a situation rendering the title thereto unmarketable, as far as plaintiff is concerned.

Judgment is directed in favor of the plaintiff as follows:

1. Dismissing upon the merits the counterclaim of the defendant for reformation and specific performance of the contract as reformed.

2. That the plaintiff recover of defendant judgment for the sum of $5,000, being the aggregate payments on account of the purchase price, with interest on $1,000 from March 13, 1926, and on $4,000 from April 17, 1926, together with the further sum of $175 for expenses on the title.    These amounts in the aggregate will be declared a lien upon the property.    (See *Elterman* v. *Hyman*, 192 N. Y. 113, and read in connection therewith *Ungrich* v. *Shaff*, 119 App. Div. 843.)    The instant case differs from the *Ungrich* case; here the expenses were made a lien by contract.

3. That plaintiff further recover judgment of the defendant for $1,462.29, the aggregate of the following sums: (a) Special damages for loss of bargain, $1,000; (b) amount paid to broker on Barnes sale, $328.80; (c) amount paid by plaintiff for Barnes expenses, $133.49; total, $1,462.29.

4. That plaintiff recover taxable costs and disbursements.

Decreed accordingly.    Settle decision and judgment on notice. The defendant may present requests to find upon which I will pass. Thirty days' stay is granted to the defendant and sixty days to make a case.    I will retain all papers, including exhibits, at my chambers in Mount Vernon, pending the settlement of the decision and judgment.