Application of ROSS DEVELOPMENT
CO., Inc.

No. 49076.

United States District Court
E. D. New York.

July 11, 1951.

Samuel S. Bisgyer, Brooklyn, N. Y., disinterested trustee.

Max Schwartz, New York City, for General Creditors' Committee.

BYERS, District Judge.

The disinterested Trustee has moved to expunge ten claims for damages (of a total of $88,555.94) asserted by as many vendees of the debtor, by reason of its default in the performance of contracts to convey real estate to be improved by the erection of a residence, the purchase price being stated in each instance, as follows:

| | |
|---|---|
| Dennison | $ 9,710.00 |
| Ruskin | 8,900.00 |
| Abrahams | 12,790.00 |
| Seifer | 8,250.00 |
| Freeman | 905.94 |

Markowitz ........ 10,000.00
Quirin ............ 10,000.00
Gluckman .......... 12,000.00
Krieger ............ 8,000.00
Klein ............. 8,000.00    $88,555.94

The down payment exacted from a given vendee was of course based upon the selling price which included the cost of the projected improvement. In each case the lot was unimproved at the time the contract was entered into, and by the simple device of agreeing to erect a residence to cost say $30,000.00 the vendor was able to collect as a down payment 10% and in some cases much more, of the total figure representing lot and building, instead of that percentage of the selling price of the lot itself.

As to each claimant no building was ever started and by the time the petition was filed, November 28, 1950, many of the contracts were in default. As to all contracts, anticipatory breach is present, either by debtor's default, or action by the Trustee.

These motions are not addressed to the down payments, as to which each claimant asserts a lien, concerning which this decision will have no bearing.

In each case the contract, upon a printed title company form, contains the following paragraph: "If for any reason whatsoever, seller shall be unable to deliver title in accordance with the provisions of this agreement, its liability shall be limited to the return of the payment made by purchaser upon the signing hereof."

There were additional provisions in some of the contracts touching delay and the incidents thereof, and in the Moses Abrahams' contract there was a change in the text of the quoted provision by changing "the" to "any" before "payment", and deleting the final four words. These changes did not alter the meaning or effect of the paragraph.

The claims for damage are made on the theory that a vendee is entitled upon an appropriate showing, to recover his deposit, and also damages for the loss of his bargain: Bulkley v. Rouken Glen, Inc., 222 App.Div. 570, 226 N.Y.S. 544, affirmed 248 N.Y. 647, 162 N.E.560; Pumpelly v. Phelps, 40 N.Y. 59; Holdridge v. Roberts, Mun.Ct., 89 N.Y.S.2d 619; Grosso v. Sporer, 123 Misc. 796, 206 N.Y.S. 227.

In none of these cases did the contract contain such a clause as the one above quoted. The effect of that engagement is sought to be avoided upon the theory that it should not be given effect here, since the opinion in the Bulkley case, supra, states that damages are recoverable if the vendor has been guilty of fraud or bad faith. That is probably a correct statement of the law of New York, which necessarily governs, Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, although the case itself did not involve fraud as the opinion is careful to state.

Nor is fraud to be presumed, but must always be proved; one difficulty here is that at the filing of the petition there were some six or seven residences on properties contracted to be sold by the debtor, in various stages of completion, of which the Trustee was able to dispose at public sale. This means that, as to some contracts at least (perhaps they were used for bait), there was an appearance of *bona fides* respecting the erection of dwellings contracted for; it is not therefore a simple case of a vendor's refusing to perform a contract in the presence of increase in value, as in the Grosso case, supra; or an impairment of the vendor's capacity, as in the Pumpelly case, supra. No case even faintly resembling this has been brought to light.

It may be that the debtor selected this particular form of contract, containing the limitation paragraph, with the very purpose of evading a claim for damages, having in mind a purpose not to perform. If that could be demonstrated by proof, or reasonable inference based upon evidence such as books, records, bank-accounts and credible testimony, it would seem that a proper basis would be present to argue that, in spite of the provisions of these contracts respecting "any reason whatsoever * *", it would be inequitable to deny recovery of damages to a given vendee-victim. In a litigation between the parties to the contract, that result would not have to wait upon elaborate and fine-spun distinctions important to legal theorists; however, in a situation where many creditors of differing

874

status are involved, it seems important that the Court should not mutilate, by ignoring, an important provision of the very contract under which the claim is asserted.

In the practical sense it may be doubted whether the claimants have very much at stake. The following expression, dealing with a claim for future rents in bankruptcy, is borrowed to explain, rather than to govern what is in this Court's mind in this connection: "The law, as we now understand it, is therefore that a contingent claim may in general be proved, provided its liquidation does not involve too speculative considerations, confessedly a variable standard." Manhattan Properties, Inc. v. Irving Trust Co., 2 Cir., 66 F.2d 470, 471.

The speculative considerations here are the contract prices respectively of the land and the contemplated buildings, as contrasted with the applicable market prices. Nothing has been alleged which would constitute proof in either category. It may be doubted if it is available or likely to become so. Moreover, the deficiency of assets measured against liabilities is probably such that little will be lost if these claims should fall by the wayside.

■ The decision will be that the Trustee's motion will be granted, with leave reserved to each claimant to vacate the order under this decision as to him or her, in the event that evidence of fraud with respect to the making of a given contract develops in the administration of this debtor's affairs, or in the criminal proceedings now pending in Nassau County, and can be shown to apply to the claim of any such person. That does not mean that, if the claim is reopened, it will necessarily be allowed; that would depend upon the ultimate showing. It would facilitate review of this decision, however, if the reviewing court were to know what could be or had been demonstrated respecting the fraud or bad faith attending the making of a given contract and the payment of a deposit thereunder.

What has been written applies to all petitions by the Trustee, and the following comments apply as indicated:

As to the *Moses Abrahams'* claim, it is obvious that the liquidated damage claim, being indefinite, cannot be resorted to for present purposes. Since no building was ever erected, the necessity for a certificate of occupancy could never have arisen, which would be a prerequisite to breach of that part of the agreement.

*Leo Seifer* and *Evelyn Freeman.* The above comment as to certificate of occupancy clause applies to these claims.

*Abrahams.* If the claim for title and search fees has been included in the claim for damages, the correct amount of these items should be added to the claim in connection with the deposit not affected by this ruling.

*Markowitz.* Same as above.

*Quirin.* This claim can be allowed under the contract as to $300.00 mostly to save expense of litigation; as to the $10,000.00 it is disallowed and expunged.

*Gluckman.* The $1,000.00, which may have been agreed upon as liquidated damages, cannot be allowed under the facts as now known. The necessary basis for establishing the right to make that claim has not been shown.

Settle orders.